**Michael Adam NAQUIN, Appellant,**

v.

**April Laine NAQUIN, Appellee.**

No. S–8728.

Supreme Court of Alaska.

March 5, 1999.

Kenneth C. Kirk, Anchorage, for Appellant.

Cris W. Rogers and David S. Houston, Houston & Houston, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, and EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

## I. *INTRODUCTION*

When Michael Adam Naquin (Adam) and April Naquin (April) divorced, the superior court awarded primary physical custody of their two children to Adam and granted reasonable visitation to April. After four months under a voluntary, informal agreement in which April had primary physical custody, April moved to modify the original custody order. Although Adam opposed this motion and disputed various factual assertions in April's affidavit, the superior court granted the motion without holding a hearing. Because we conclude that the decision to forego a hearing was in error, we reverse

and remand for a hearing on the motion to modify custody.[1]

## II. FACTS AND PROCEEDINGS

Adam and April Naquin separated in May 1994. They have two children, Shadow and Tavin. April moved out of the marital home, but the children remained with Adam. In April 1997 Adam and April entered into an arrangement under which Adam paid April $500 a month to provide day care for the children from approximately 8:00 a.m. to 7:00 p.m. while Adam worked. At the same time, Adam wrote a letter, transferring primary physical custody to April from April 1997 until September 1997, allegedly to help April to qualify for day care assistance.

In August 1997 both Adam and April appeared before the superior court in an uncontested hearing to finalize their divorce. April outlined for the court the terms of the parties' proposed agreement. These included an award of primary physical custody to Adam with reasonable visitation for April, despite the fact that she had temporary custody of the children at the time of the hearing. Adam appeared at this hearing to voice his agreement to April's terms. Superior Court Judge Eric Smith then issued a divorce and custody decree on September 17, 1997, based on the parties' agreement.

Eleven days after the date of the decree, Adam wrote a letter allowing April to have physical custody of both children "until further notice." The children began to stay with April during the week while attending school. April moved to modify custody and to formalize this transfer of physical custody in late January 1998. Adam opposed the motion, arguing that there was no significant change in circumstances and maintaining that the parties agreed to this temporary transfer in order for Adam to work more hours to pay off outstanding marital debts.

Adam also requested an evidentiary hearing on April's motion.

The trial court granted April's motion without first holding a hearing, finding that Adam had "voluntarily transferred custody of the children" to April. Adam moved for reconsideration, again asserting his right to a hearing. The court denied this motion, stating:

> [T]here are no *material* facts at issue. As defendant cannot deny, there was a significant change in circumstances in this case when defendant assigned the children to plaintiff "until further notice." ... In short, defendant has provided no facts to challenge plaintiff's assertion that, as of the time of her motion (which was several months after plaintiff had received the children from defendant), it was in the best interests of the children for them to remain with her as principal custodian. Having provided no facts, defendant is not entitled to an evidentiary hearing.

Adam appeals.

## III. DISCUSSION

### A. Standard of Review

▇▇▇ "The adequacy of the notice and hearing afforded a litigant in child custody proceedings involves due process considerations."[2] Because a constitutional issue presents a question of law, we review such an issue de novo, applying our independent judgment.[3]

### B. The Superior Court Erred in Granting the Motion to Modify Custody Without an Evidentiary Hearing.

▇▇▇ Adam argues that because he opposed the motion to modify the original custody order, the court should have held an evidentiary hearing. "Procedural due process under the Alaska Constitution requires 'notice and opportunity for hearing appropriate to the nature of the case.'"[4] In a custo-

---

1. We note that the superior court has the discretion to maintain the custody arrangement currently in place pending a hearing.

2. *Lashbrook v. Lashbrook,* 957 P.2d 326, 328 (Alaska 1998); *see also Walker v. Walker,* 960 P.2d 620, 621–22 (Alaska 1998).

3. *See Walker,* 960 P.2d at 622; *Lashbrook,* 957 P.2d at 328.

4. *Wright v. Black,* 856 P.2d 477, 480 (Alaska 1993) (quoting *Aguchak v. Montgomery Ward Co.,* 520 P.2d 1352, 1356 (Alaska 1974)).

dy proceeding, the parties have a right to an adequate hearing, "which grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination."[5] "We have repeatedly held that '[a] party opposing a motion to modify child custody has the right to a hearing before the superior court grants the motion.'"[6]

■ Because Adam opposed the motion, the trial court should not have required him to meet an evidentiary threshold for a hearing. Although the trial court is not required to grant a hearing on a motion to modify if it is plain that the facts alleged in the moving papers would not warrant a modification,[7] this rule is "inapplicable to a case ... in which the trial court grant[s] rather than denie[s] an opposed motion to modify a child custody order."[8]

Our decision in *Walker v. Walker*[9] directly controls this case. In *Walker*, the superior court granted a motion to modify custody without holding a hearing. It based its decision on the parties' written agreement to transfer physical custody during the school year, submitted by the father in support of his motion.[10] But the children's mother had opposed the motion and submitted an affidavit contesting the father's allegation of unfit conduct, as well as the scope and purpose of the agreement. We held that the superior court erred in failing to hold an evidentiary hearing before ruling on the opposed motion to modify custody, and we remanded for an evidentiary hearing to determine whether the proposed modification was in the best interests of the children.[11]

Here, the superior court did not hold an evidentiary hearing because it found that there were "no material facts at issue." But like the mother opposing the motion to modify in *Walker*, Adam submitted an affidavit contesting April's assessment of his current fitness for custody and the duration and purpose of the agreement. Thus, the superior court's failure to hold an evidentiary hearing on the best interests of the children and an appropriate visitation schedule constitutes reversible error.

■ Our holding today does not mean that the trial court erred in finding a significant change of circumstances. When addressing an informal modification of a visitation arrangement in *Morino v. Swayman*,[12] we noted that although "[c]ustodial parents should have the flexibility to experiment with new visitation schedules without fearing that every temporary change could be the basis for modifying visitation[,][13] ... at some point, informal or de facto modifications of custodial or visitation arrangements should be formalized."[14] Even the dissent in *Morino* agreed that "changing a child's residence during the school week[ ] may be sufficient even if lasting for a few months, assuming the change was in the child's best interests."[15] Under Adam and April's arrangement, the children's residence shifted during the school week for a period of months. Thus, April met her burden to merit a hearing on a possible change in custody.[16] But April's

---

5. *Howlett v. Howlett*, 890 P.2d 1125, 1127 (Alaska 1995) (citation omitted).

6. *Walker*, 960 P.2d at 622 (alteration in original) (quoting *Lashbrook*, 957 P.2d at 328); *see also Hernandez v. Freeman*, 938 P.2d 1017, 1018 (Alaska 1997) (relying on *Howlett*); *Howlett*, 890 P.2d at 1127.

7. *See Walker*, 960 P.2d at 622; *see also C.R.B. v. C.C.*, 959 P.2d 375, 378 (Alaska 1998).

8. *Hernandez*, 938 P.2d at 1018.

9. 960 P.2d 620 (Alaska 1998).

10. *See id.* at 622.

11. *See id.* at 622–23.

12. 970 P.2d 426 (Alaska 1999).

13. 970 P.2d at 429; *see Gaston v. Gaston*, 954 P.2d 572, 574 n. 4 (Alaska 1998) ("Alaska's family law encourages custodial parents to be flexible in experimenting with visitation schedules, and in most cases parents should feel free to end such experiments if they conclude that they are not working.").

14. *Morino*, 970 P.2d at 429.

15. *Id.* at 432 (Fabe, J., dissenting).

16. *Cf. Boone v. Boone*, 960 P.2d 579, 582 (Alaska 1998) (holding that in the context of a modification of a child support order, children's temporary and voluntary change in residence for a period of ten months was a material change in circumstances).

success in meeting that requirement does not affect Adam's right to be heard on the issue of the children's best interests or to present his recommendations for a visitation schedule.

In this case, the superior court had already awarded Adam primary physical custody in accordance with the parties' agreement. Nevertheless, by granting April's motion to modify custody without holding a hearing, the court, in effect, forced Adam to bear the burden of demonstrating that maintaining his physical custody award was in the best interests of the children.

## IV. CONCLUSION

Because the superior court erred by not holding a hearing before granting the opposed motion to modify custody, we REVERSE and REMAND for a hearing.