Anita JOHN, Appellant,

v.

John BAKER, Appellee.

No. S–9891.

Supreme Court of Alaska.

Aug. 31, 2001.

Andrew Harrington and Mark Regan, Alaska Legal Services Corporation, Fairbanks, for Appellant.

Deborah Niedermeyer, Contract Attorney, J. John Franich, Assistant Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

In a previous appeal of this case, *John v. Baker I*, we held that the Northway Tribal Court had jurisdiction to adjudicate child

custody disputes involving tribal members.[1] We remanded to the superior court for determination whether the tribal court's 1995 custody decision in this case should be recognized by the superior court under the comity doctrine.[2] On remand, the superior court determined that, because much of the record of the tribal proceedings had been lost, "the Court will never know what actually transpired [in the Northway proceeding]." Despite the dearth of information about those proceedings, however, the superior court concluded that the tribal court had not afforded due process to the father, John Baker. The superior court therefore denied comity to the tribal court's order. Because we conclude that no sound comity analysis could be carried out without using available procedures for reconstructing the record of the tribal proceedings, we reverse the superior court's decision. However, because the tribal court order at issue in this case has expired by its own terms, we do not require reconstruction of the record, but instead remand with instructions that the superior court refer this case to the Northway Tribal Court for new proceedings.

## II. FACTS AND PROCEEDINGS

This case concerns the custody of two children: John M. Baker II and Emmanuel Kenneth Baker. The children's mother, Anita John,[3] is a member of the Native Village of Mentasta. Their father, John Baker, is a member of the Native Village of Northway. In 1994 Ms. John filed a petition for custody of the children in the Mentasta Tribal Court. Both parties later filed petitions for custody with the Northway Tribal Court, and that court eventually assumed jurisdiction over the case.

Before Northway held its custody hearing, Northway Judge Lorraine Titus called Mentasta First Chief (and Ms. John's adoptive sister) Nora David to discuss how the case should be handled. The two tribal officials apparently agreed that Northway should hear the case, but that the two tribes should cooperate. The exact nature of the planned cooperation between the tribes is unclear.

In 1995 the Northway court held one or more evidentiary hearings and then ordered the parents to share custody of the children on a month-by-month basis. The tape recording of the proceedings has been lost, and many significant details are disputed: it is unclear how many hearings took place, who was present, who acted as a judge on the Northway court, and which witnesses spoke. The parties seem to agree, however, that all of the Mentasta members who came to the hearings were relatives of Ms. John. They also apparently agree with the superior court's conclusion that the Northway proceedings were "conducted more like a 'mediation' than an adjudication." But they disagree, significantly, about what role Ms. John's Mentasta relatives played in the hearing and about whether Mr. Baker's father was permitted to testify.

The Northway court ordered the parents to share custody on a month-by-month basis until John II entered kindergarten, at which point the court would meet again to decide permanent placement. Dissatisfied with the shared custody order, Mr. Baker filed a new custody petition with the Alaska superior court. Although Ms. John moved to dismiss based on the prior tribal adjudication, the superior court found that Northway had lacked jurisdiction to hear the case.[4] It therefore denied Ms. John's motion to dismiss and eventually awarded primary custody to Mr. Baker.[5]

On appeal, we ruled in *John v. Baker I* that state and tribal courts had concurrent jurisdiction over the case so long as the children were members or eligible for membership in Northway.[6] We remanded, in-

1. *John v. Baker*, 982 P.2d 738, 765 (Alaska 1999).

2. *See id.*

3. Anita John was the mother's name at the time this case was originally filed; she has apparently since legally changed her name. For purposes of consistency with our previous opinions, however, this opinion will continue to refer to her as Anita John.

4. *See John*, 982 P.2d at 743–44.

5. *See id.*

6. *See id.* at 764.

structing the superior court to make factual findings and apply the comity doctrine in deciding whether to defer to Northway's decision in the case.[7]

On remand, Superior Court Judge Ralph R. Beistline held that, because of due process failings in the Northway proceedings, comity was not due to the tribal court decision. The superior court's ruling depended on a factual finding that Mentasta Council members who were relatives of Ms. John exercised undue influence over the Northway Tribal Court. However, as the superior court recognized, the available record of Northway's proceedings was so sparse that "the Court will never know what actually transpired that day."

The superior court additionally found that the Baker children were not Northway members, but that they were eligible for membership. It therefore held that Northway had subject matter jurisdiction. And it found that Northway has an appeals process, but that the tribal court is not required to grant appeals. The superior court concluded that because Mr. Baker never sought an appeal through the Northway court, the issue was moot. Finally, the superior court found that Mr. Baker had received proper and timely notice of all relevant proceedings.

After the superior court issued its decision, Ms. John moved for reconsideration and submitted three new affidavits challenging the superior court's factual conclusion that Mentasta members had influenced the Northway court. Two of these affidavits were from judges of the Northway Tribal Court, who stated that Ms. John's Mentasta relatives "were not present during our deliberations, they did not participate as decision-makers, and they were not regarded or treated as

Northway Tribal Court judges." The superior court declined to reconsider its decision. It did not directly address the new affidavits, or indicate whether it had considered them in reaching its conclusion.

Ms. John now again appeals to this court.

### III. STANDARD OF REVIEW

This case involves both questions of fact and questions of law. We review factual findings for clear error, and will uphold the superior court's findings unless we are "left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding."[8] In reviewing a superior court's comity determination—which will often entail analysis similar to that used in jurisdiction[9] or due process[10] determinations—we apply our independent judgment.[11]

### IV. DISCUSSION

In *John v. Baker I*, we held that the Northway Tribal Court may assert jurisdiction that is concurrent with the state's over this case, and that "the comity doctrine provides the proper framework for deciding when state courts should recognize tribal court decisions."[12] We noted several possible circumstances in which a state court might appropriately deny comity to tribal decisions.[13] On remand, the superior court considered two questions which are germane to comity analysis in this case: whether Northway had subject matter jurisdiction[14] and whether Northway provided the parties with due process of law. The superior court correctly resolved the first question, but was unable adequately to consider the second

---

7. *See id.* at 764–65.

8. *Brosnan v. Brosnan,* 817 P.2d 478, 480 (Alaska 1991).

9. *See B.J. v. J.D.,* 950 P.2d 113, 115 (Alaska 1997).

10. *See Naquin v. Naquin,* 974 P.2d 383, 385 (Alaska 1999).

11. *Accord Gesinger v. Gesinger,* 531 N.W.2d 17, 19 (S.D.1995) (applying de novo standard of review to tribal court comity determination).

12. 982 P.2d at 761.

13. *See id.* at 763.

14. Although *John v. Baker I* held as a general matter that tribes have jurisdiction over cases involving the children of members, *see id.* at 765, there remained the question whether Northway properly claimed jurisdiction on the individual facts of this case. Where a foreign tribunal has already adjudicated a case, inquiry into jurisdiction is a part of comity analysis. *See id.* at 764; *Restatement (Third) of Foreign Relations Law* § 482 (1987).

question because of the underdeveloped record in this case.

### A. The Burden of Proof Rests on the Party Challenging Comity.

As an initial matter, the parties dispute who should bear the burden of proof. We have not previously addressed the allocation of the burden of proof in comity cases.[15] However, both the public policy articulated in *John v. Baker I* and case law from other states support assigning the burden of proof to the party challenging a tribal judgment's validity.

In *John v. Baker I*, we noted that "as a general rule, our courts should respect tribal court decisions under the comity doctrine."[16] Following this policy, it should be presumed that tribal courts' decisions are sound and deserving of comity unless the challenging party can show otherwise. Such presumption against judicial error is common between cooperating courts of concurrent jurisdiction—in cases arising under the Parental Kidnapping Prevention Act[17] and the Uniform Child Custody Jurisdiction Act,[18] courts have placed the burden of proof upon the party challenging another state's judgment.[19] And in considering challenges to tribal judgments, state courts have upheld "the general rule ... that the burden of proof falls upon one attacking the validity of a foreign judgment."[20] We agree that a party challenging the extension of comity to a tribal judgment bears the burden of proof.[21]

### B. Because the Children Are Eligible for Membership in Northway, the Northway Court Had Subject Matter Jurisdiction.

Following our decision in *John v. Baker I*, the state court should deny comity if the tribal court lacked personal or subject matter jurisdiction over the case it adjudicated.[22] Mr. Baker raises a number of arguments why Northway lacked jurisdiction in this case.[23] The superior court correctly rejected all of these claims.

15. We have, however, applied a presumption of validity to a judgment from another state, even when full faith and credit was not owed. *See State, Dep't of Pub. Safety, Div. of Motor Vehicles v. Fann*, 864 P.2d 533, 536 (Alaska 1993) (holding that "where DPS seeks to use a foreign judgment to enhance a license revocation period in Alaska, we analogize to the full faith and credit clause to give presumptive validity to the foreign judgment" unless there is reason to believe that foreign state judgment was "constitutionally infirm").

16. 982 P.2d at 763.

17. 28 U.S.C. § 1738A (2000).

18. Former AS 25.30.010–.910.

19. *See, e.g., Thoma v. Thoma*, 123 N.M. 137, 934 P.2d 1066, 1073 (App.1996). While the Parental Kidnapping Prevention Act and Uniform Child Custody Jurisdiction Act are not controlling sources of law in this case, *see John*, 982 P.2d at 762, they do reflect the measured consideration of lawmakers confronting issues closely analogous to those presented to us today.

20. *In re Marriage of Red Fox*, 23 Or.App. 393, 542 P.2d 918, 921 (1975); *see Leon v. Numkena*, 142 Ariz. 307, 689 P.2d 566, 568 (App.1984) (applying same rule in recognizing tribal judgment); *see also Malik v. Malik*, 99 Md.App. 521, 638 A.2d 1184, 1191 (1994) ("Pakistani court's custody order is presumed to be correct, and this presumption shifts to [party challenging comity] the burden of proving by a preponderance of evidence that [comity is not warranted].").

21. Mr. Baker offers an alternate burden of proof argument. He maintains that because "[t]he party asserting a fact generally bears the burden of proving that fact[, especially] when the party controls the evidence which bears upon that fact," *Pinneo v. Pinneo*, 835 P.2d 1233, 1236 (Alaska 1992), allowing Ms. John to benefit by Northway's loss of the record violates "fundamental fairness." However, Mr. Baker does not claim that Ms. John ever controlled the record in this case or that she was responsible for its loss, nor does he claim that Northway somehow acted to advance Ms. John's cause by misplacing the record. It is therefore difficult to see how "fundamental fairness" would require penalizing her for the record's disappearance. Nor is it clear that reallocation of the burden of proof would be the appropriate judicial response if a record did disappear under suspicious circumstances, although loss of the record under such circumstances would certainly raise significant due process concerns for a court applying the comity doctrine.

22. 982 P.2d at 764.

23. Mr. Baker argues that jurisdiction was lacking because he submitted to the jurisdiction of the Northway Tribal Court, but the case was instead heard by a hybrid Northway/Mentasta court.

In *John v. Baker I*, we held that Alaska Native tribes as a general matter retain sovereignty and jurisdiction over "custody disputes involving tribal members" [24]—but that a tribe only has subject matter jurisdiction over a particular dispute if the children "are members or eligible for membership" in the tribe.[25] On remand, we instructed the superior court to determine the children's membership status by applying tribal law.[26] The superior court did so and concluded that the children were eligible for membership. Mr. Baker now claims that the superior court had no authority to interpret and apply tribal law. But it is well within the power of state courts to apply the law of another state, nation, or tribe where appropriate—we expressly instructed the superior court to do so in this case.[27] And although Mr. Baker claims that state courts cannot decide this issue because Northway's membership law is "unsettled," it could be claimed that any legal issue that gives rise to litigation is an "unsettled" point of law. It is nevertheless frequently the duty of courts to interpret law from other jurisdictions and resolve those "unsettled" points.[28]

Because the superior court correctly determined that Northway had subject matter jurisdiction over this case, it properly concluded that there exists no jurisdiction-based reason to deny comity to Northway's order.

### C. The Superior Court Could Not, in the Absence of an Adequate Record, Determine Whether the Northway Court Granted the Parties Due Process.

Almost no record of the Northway proceedings was before the superior court when that court conducted its comity review. The original tape recording of the tribal court's evidentiary hearing could not be located, and "other crucial documents and/or transcripts that would better enable the Court to determine exactly what transpired" were missing as well—although it is unclear whether the parties actually sought discovery of all of these documents. The superior court attempted to piece together the history of the Northway proceedings, but was understandably frustrated by the scant record, which "consist[ed] largely of the pleadings filed by the parties and nothing more." As a result, legitimate disputes persist regarding even such basic questions as "whether there were one or two hearings and ... who may have attended these hearings." Because of the incomplete record, the superior court concluded, "the Court will never know what actually transpired.... Instead, the Court is left with conflicting stories and bits and

---

Northway's notice of judgment clearly names the adjudicating court as the Native Village of Northway Tribal Court; it gives no indication that any other court participated in the case. To the extent that Mr. Baker complains that Mentasta members assumed an informal or unrecorded adjudicatory role in this case, the issues he raises relate to due process rather than jurisdiction.

Mr. Baker also argues that Northway lacked jurisdiction because its proceeding was a "non-binding mediation." He cites no relevant evidence for his claim that Northway intended the proceeding to be "non-binding," and offers no legal support for the claim that the mediation-like character of the proceedings should defeat the tribe's subject matter jurisdiction.

Finally, Mr. Baker argues that this case arose on Indian country, and that Public Law 280, 28 U.S.C. § 1360 (1993), which extends Alaska's jurisdiction over disputes arising on Indian country, deprives the Northway court of *all* jurisdiction. Because his brief offers virtually no discussion of the complex law governing this claim, this argument is waived for inadequate briefing. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

**24.** 982 P.2d at 765.

**25.** *Id.* at 759.

**26.** *See id.* at 759, 764.

**27.** *See id.* at 764. *See also In re Baby Boy Doe,* 123 Idaho 464, 849 P.2d 925, 930–31 (1993) (where tribe has not made membership determination in Indian Child Welfare Act case, state court must decide).

**28.** *See, e.g., In re Adoption of A.F.M.,* 15 P.3d 258, 262–63 (Alaska 2001) (interpreting and applying Washington law in resolution of adoption case).

Mr. Baker also argues that the court erred in its interpretation of tribal law, because under Northway's law the Baker children could not become Northway members without permission from the mother's tribe. The source cited by Mr. Baker does not support his claim that permission from the mother's tribe is an absolute prerequisite for membership. Moreover, such a requirement, if it existed, would not stop the children from being *eligible* for membership in Northway.

pieces of evidence scattered throughout the depositions and affidavits."

Mr. Baker argues that the Northway court's loss of the case record in itself amounts to a violation of his due process rights. We reject this claim. However, we conclude that the absence of the record makes it impossible to resolve another due process claim raised by Mr. Baker: the claim that Ms. John's relatives played an adjudicatory role in the Northway proceedings.

1. *The tribal court's loss of part of the case record is not in itself a due process violation.*

■■■ The tribal court's loss of the hearing record does not amount to a violation of due process. Northway's Judicial Code requires the court to maintain records of proceedings. Neither party alleges that Northway failed to do so, only that documents and the recording of the hearing were subsequently misplaced.[29] Administrative error of this sort is not unique to tribal courts: the Alaska Rules of Appellate Procedure anticipate the same problems arising in state court, and provide guidelines for the court to recreate missing records.[30] In this case, the Northway court had no chance to pursue internal remedies for the loss of the Baker record because Mr. Baker never sought appellate review in the tribal court. Given that a trial court's misplacement of documents would not, in state court, compromise the validity of the entire proceeding, we cannot find that an identical error by a tribal court, which the tribal court has not had opportunity to remedy, violates due process or constitutes an independent ground for refusing comity to that court's decision.[31]

**29.** The Northway court was in a formative stage at the time it heard this case; it is to be presumed that the court's organization and administration have improved in its subsequent years of growth.

**30.** *See* Alaska R.App. P. 210(i); Alaska R.App. P. 604(a)(2).

**31.** Mr. Baker has presented no evidence to suggest that appeal within Northway would not have sufficiently remedied the loss of the hearing record. In a situation such as this, a litigant's

However, absence of a suitably developed record may in many cases—and does in this case—make it impossible for the Alaska state court to carry out comity analysis. Particularly when a challenger alleges due process failings, his or her challenge may be properly assessable only by a court with access to the record of tribal proceedings. Tribal courts have authority to maintain records in the manner they deem appropriate; they are under no obligation to duplicate state record-keeping practices. But unless a tribal court maintains some record suitable for review, its decision may be vulnerable to attack in state court and its wider effect may be jeopardized.

2. *Allegations that Ms. John's relatives served an adjudicatory function in the Northway proceedings are not reviewable in the absence of a record.*

In *John v. Baker I*, we noted that a state court might appropriately deny comity to a tribal court decision if the tribal proceedings did not afford the parties due process.[32] We explained that full and fair adjudication by an impartial tribunal is a requirement for comity, but that tribal courts need not follow the same procedures as Anglo–American courts:

> In deciding whether tribal court proceedings complied with due process, courts should consider whether the parties received notice of the proceedings and whether they were granted a full and fair opportunity to be heard before an impartial tribunal that conducted the proceedings in a regular fashion. An indication that the judiciary was dominated by the opposing litigant would suggest that due process had been violated.

failure to exhaust tribal remedies is a significant factor to be considered when that litigant challenges comity. While we do not adopt a strict exhaustion requirement for tribal adjudication of child custody cases, because such a requirement might in some cases disserve the best interests of the child, we note that a party's failure to seek tribal appellate review may seriously undermine any claims that the tribal court denied him due process.

**32.** 982 P.2d at 763.

But this due process analysis in no way requires tribes to use procedures identical to ours in their courts. The comity analysis is not an invitation for our courts to deny recognition to tribal judgments based on paternalistic notions of proper procedure. Instead, in deciding whether a party was denied due process, superior courts should strive to respect the cultural differences that influence tribal jurisprudence, as well as to recognize the practical limits experienced by smaller court systems.[33]

In this case, Mr. Baker's primary due process claim is an allegation that the Northway Tribal Court was dominated or excessively influenced by Ms. John's relatives from Mentasta.[34] He bases the claim on two incidents: the pre-hearing telephone contact between Northway and Mentasta representatives, and the evidentiary hearing itself. In both incidents, Northway's action in cooperating with another tribe and involving that tribe's members in the proceedings could have been sound judicial practice deserving of respect and comity in state court. However, Mr. Baker alleges that the two tribes did more than cooperate: according to him, Northway permitted Ms. John's relatives, two of whom were actually caregivers to the children in question, to act as adjudicators of the custo-dy dispute. In the absence of a full record, it is impossible to draw a sound legal conclusion about the role played by Ms. John's Mentasta relatives in the Northway proceedings.

#### a. Pre-hearing telephone contact between Northway and Mentasta

Mr. Baker argues that the pre-hearing telephone contact between Northway's Judge Lorraine Titus and Mentasta's First Chief (and Ms. John's adoptive sister) Nora David "compromise[d] the impartiality of the tribunal so as to deprive him of due process." The superior court did not rule that this contact, in itself, amounted to a violation of due process.[35] However, because we are urged to affirm denial of comity on these alternate grounds, we will briefly discuss this issue.[36]

Pre-hearing communication between two courts of potentially concurrent jurisdiction, or two tribes with shared interest in a custody case, does not constitute a due process violation. Communication and coordination between courts promotes the efficient administration of justice; it is a practice encouraged and at times mandated for state courts in analogous circumstances.[37] Official

33. *Id.* (citations omitted).

34. Mr. Baker further alleges due process violations based on Northway's alleged unwritten policy of denying all appeals; but the source he cites does not reflect the existence of such a policy. And he alleges that the Northway court's eight-month delay between Mr. Baker's initial custody filing and the court's eventual action was sufficiently excessive to violate due process. Finally, he alleges that due process was violated because one of the five Northway judges who decided the case was not personally present for the evidentiary hearing. The superior court did not rely on any of these claims in reaching its conclusion that due process had been violated. Because we determine that the record is not sufficiently developed to support due process review, we do not discuss these issues.

35. The superior court did express "considerable concern" that, based on the phone call, "the proceedings were not impartial from the outset," and implied at points in its opinion that the telephone call was relevant to its assessment of the Mentasta members' role in the evidentiary hearing. We note that at least one factual finding relied upon by the court in considering the phone call was clearly erroneous: although the court found that Nora David had "admitted involvement on the part of the Mentasta tribe would be 'unfair,' " David's affidavit states only that Mentasta participation might *appear* unfair to Mr. Baker.

36. We may affirm the superior court's decision on any ground supported by the record. *See Mackie v. Chizmar*, 965 P.2d 1202, 1207 n. 4 (Alaska 1998).

37. *See* AS 25.30.300(a)(3) (under Uniform Child Custody Jurisdiction and Enforcement Act, Alaska courts may only exercise jurisdiction if a court of the child's home state declines jurisdiction because it recognizes Alaska as more appropriate forum); AS 25.30.860(a) (authorizing state courts to contact courts in other states regarding custody proceedings); AS 25.30.880 (authorizing state courts to request assistance from courts of other states, such as conducting hearings, issuing court orders, and sharing information); *see also Uniform Child Custody Jurisdiction & Enforcement Act* § 101 cmt., 9 pt. 1A U.L.A. 657 (1999) (Act's goals include avoidance of jurisdictional competition and promotion of cooperation between courts).

contact between Northway and Mentasta for purposes of discussing jurisdiction was, in itself, wholly appropriate.

Mr. Baker alleges, however, that this particular call raises special due process concerns because David was Ms. John's relative and a named "person involved" in Mr. Baker's custody petition.[38] He further implies that during this call First Chief David influenced Judge Titus's determination of how "the custody decision should be made" and what "the nature and composition of the tribunal which would hear the case" would be. These claims suggest that the agreement reached by the two officials during the phone call concerned more than the appropriate issues of cooperation between tribal governments. Rather, Mr. Baker seems to allege that Judge Titus allowed First Chief David to shape the substantive outcome of the case, or that the two officials agreed that relatives of Ms. John from Mentasta should have some adjudicatory role in determining that outcome. As will be discussed in the next section, due process concerns could be raised if the record supported Mr. Baker's allegation that Ms. John's close relatives, some of whom were also caregivers for the children whose custody was at issue, actually acted in an adjudicatory capacity in this case. The telephone contact between Judge Titus and First Chief David is relevant to due process only to the extent that it may support that allegation. Aside from this possibility, however, the telephonic communication and cooperation between the tribes was entirely appropriate and in keeping with due process.

b. *Mentasta's role in the evidentiary hearing*

■ The cooperation between Northway and Mentasta in conducting the custody hearing could have widely varying legal significance, depending on factual variables undisclosed in the record before us.

The superior court noted that Northway's hearing was "conducted more like a 'mediation' than an adjudication," but correctly concluded that this variation from the adversarial process followed by state courts was an appropriate exercise of tribal authority and not a violation of due process. To the extent that Mr. Baker complains that Northway violated due process simply by following a mediation-like mode of dispute resolution, we reject this argument. It is well within the legitimate authority of the tribal court to maintain traditional dispute-resolution practices that differ from those observed in state court. Where, as here, tradition or justice demanded the involvement of members of another tribe, it was also appropriate to give those individuals a role in the proceedings.

Nevertheless, Mr. Baker's allegation of judicial bias raises potential due process concerns because the Mentasta members were related to Ms. John and in some cases caregivers to the children, and because it is unclear exactly what role they played in the Northway court. Mr. Baker alleges at some points in his brief that Ms. John's relatives actually acted as members of the panel deciding the custody dispute; he further alleges that the panel denied his own father the opportunity to speak as a witness. If the record supported this alleged disparate treatment of the two parties and their families, and in particular if it were shown that Ms. John's relatives actually acted in an adjudicatory role during the Northway proceedings, this could be a case in which "the judiciary was dominated by the opposing litigant" in violation of Mr. Baker's due process rights.[39] But if the Mentasta members were merely influential and persuasive in the manner of any compelling interested witness in a child custody case, or in the manner of an intervening tribe in an Indian Child Welfare Act case, then their participation was appropriate and gives rise to no due process concerns. Nor would a joint panel comprised of adjudicators from two tribes, such as that alleged here, give rise to due process concerns unless one party were shown to have dominated the panel. Indeed, for small tribes, joint or intertribal panels may be a reasonable adjudi-

---

**38.** The parties dispute whether First Chief David was named on the custody petition because of her personal connection to the case or because of her official interest, as Mentasta's First Chief, in the earlier petition filed by Ms. John in the Mentasta Tribal Court.

**39.** *John*, 982 P.2d at 763.

cative model; particularly in the appellate arena, such panels may allow tribes to avoid actual or apparent conflicts of interest of the sort averred by Mr. Baker in this case.

### D. *The Superior Court Should Have Sought a Fuller Record of the Northway Proceedings.*

■ The lack of a record of the Northway court proceedings makes it impossible to know whether those proceedings comported with due process. In order for a court to assess the decision of a court of concurrent jurisdiction under the comity doctrine, it is necessary as a threshold matter that the analyzing court know what happened in the disputed case. Here, given the lack of a record, the superior court simply did not have enough evidence to accurately assess the Northway proceedings.

The superior court in this case had several appropriate options for reconstructing the Northway record; two general models are suggested by the Alaska Rules of Appellate Procedure. By working to develop the record further, the court could have avoided the near-impossible task of drawing reasonable factual conclusions from the minimal evidence before it.

The Alaska Rules of Appellate Procedure provide three models for courts to follow in correcting record deficiencies.[40] Under Rule 210(i),[41] which governs appeals from the superior court, and Rule 604(a)(2),[42] which governs appeals from the district court, parties may by stipulation supplement incomplete records and resolve any "differences ... as to whether the record on appeal truly discloses what occurred in the [lower] court." [43] Rule 604(a)(2) makes the appeals court responsible for addressing and resolving disagreements about the record,[44] while Rule 210(i) gives that responsibility to the trial court.[45] A third model for correcting record deficiencies is Rule 210(b)(8), which sets forth obligations of the parties appealing cases for which no tape or transcript is available.[46] Following this rule, the parties may

40. Outside of Alaska's Rules of Court, the general rule for records which are so incomplete as to preclude meaningful review calls for remand to the factfinder. *See State, Dep't of Revenue v. Merriouns*, 894 P.2d 623, 627 n. 4 (Alaska 1995) ("when the factual record is incomplete or improperly developed, the proper course is a remand to the factfinder, in this case the agency").

41. Alaska Rule of Appellate Procedure 210(i) provides:

*Power of Court to Correct, Modify or Supplement.* It is not necessary for the record on appeal to be approved by the trial court or a judge thereof except as provided in subparagraph (b)(8) and in Rule 211, but if any difference arises whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to that court's decision. If anything material to either party is omitted from the record on appeal by error or accident by court personnel, or is misstated therein, the parties by stipulation, the trial court, or the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected. All other questions as to the content and form of the record shall be presented to the appellate court. On motion in the appellate court, and for cause, an excerpt of record may be modified or supplemented to correct omissions by counsel.

42. Rule 604(a)(2) provides:

*Power of Court to Correct or Modify Record of District Court.* If any differences arise as to whether the record on appeal truly discloses what occurred in the district court, the difference must be submitted to and settled by the superior court and the record made to conform to it. If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, the district court, or the superior court, on motion or of its own initiative, may direct that the omission or misstatement be corrected.

43. Rule 604(a)(2).

44. They are "submitted to and settled by the superior court and the record made to conform to it."

45. Under Rule 210(i), "if any difference arises whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to that court's decision"; other "questions as to the content and form of the record shall be presented to the appellate court."

46. Rule 210(b)(8) provides:

*Statement in Lieu of Transcript.* In the event no stenographic report or electronic recording of the evidence or proceedings at a hearing or trial was made, the appellant may prepare a statement of the evidence of proceedings from the best available means, including the appellant's recollection, for use instead of a stenographic or

submit statements of the evidence of proceedings from the best available means—including their own recollections—to the trial court for settlement and approval by that court; approved statements are then transmitted to the appellate court for use in lieu of a transcript. Although these rules would only apply by analogy to the proceedings on remand, they suggest that the superior court had at least three reasonable options for fulfilling its responsibility to obtain an adequate record from which to draw conclusions. The superior court could itself have taken a more active role in developing the record—an approach which among other things would have included careful consideration of the Northway judges' affidavits. Or, it could have concluded that the tribal court was better positioned to reconstruct its own proceedings, and therefore requested assistance from Northway.[47] Either approach would have permitted the court to develop a more substantive factual foundation for the resolution of Mr. Baker's due process claims.

### E. Referral Is the Appropriate Remedy in this Case.

█ Under ordinary circumstances, justice would require that the record of the Northway proceedings be reconstructed in order to facilitate informed comity analysis. However, it is not reasonable or necessary to require reconstruction of the record in this case, because the issue resolved in the 1995 Northway proceedings has become moot with the passage of time. Northway's 1995 order, by its own terms, resolved the custody dispute only temporarily: the tribal court ordered that once John Baker II started school, the parties should participate in a new hearing to determine permanent placement. John II turned ten on July 31, 2001, and has presumably been enrolled in school for some time. We will not ask the tribe, or require the state, to expend further judicial resources reconstructing the record for a custody order that has become irrelevant.

At most, Mr. Baker's due process claims allege case-specific errors that could occur in almost any judicial proceeding. Mr. Baker has not alleged or proved any ongoing institutional deficiency; nor has he established that the Northway Tribal Court would be incapable of fairly adjudicating future issues raised in this case or in others. Accordingly, even if true, Mr. Baker's allegations would not overcome the presumption that the Northway Tribal Court's actions will generally deserve comity. And since Mr. Baker chose to initiate proceedings in the tribal court, that court should properly be regarded as the preferred forum for resolving the parties' custody dispute in the first instance. We therefore determine that, on the unusual facts of this case, the proper resolution is not to redevelop the record of the Northway proceedings. Rather, we conclude that the superior court should refer the case back to the tribal court with a request that that court consider and decide custody arrangements appropriate to the current circumstances. This resolution is more suitable given the passage of time and changing circumstances in this case. If Mr. Baker again feels that the Northway proceedings do not warrant state court recognition under the comity doc-

---

electronically recorded transcript. This statement shall be served on the appellee, who may serve objections or proposed amendments, and shall be submitted to the court from which the appeal is being taken for settlement and approval. As settled and approved, the statement shall be filed with the clerk of that court and transmitted to the appellate court in lieu of a transcript.

**47.** AS 25.30.880, which governs interactions between state courts under the Uniform Child Custody Jurisdiction and Enforcement Act, provides one model for cooperation between courts of concurrent jurisdiction:

(a) A court of this state may request the appropriate court of another state to

(1) hold an evidentiary hearing;

(2) order a person to produce or give evidence under procedures of that state;

(3) order that an evaluation be made with respect to the custody of a child involved in a pending proceeding;

(4) forward to the court of this state a certified copy of the transcript of the record of the hearing, the evidence otherwise presented, and any evaluation prepared in compliance with the request; and

(5) order a party to a child custody proceeding or a person having physical custody of the child to appear in the proceeding with or without the child.

(b) On request of a court of another state, a court of this state may hold a hearing or enter an order described in (a) of this section.

trine, he is of course free to file a new challenge upon the conclusion of the Northway Tribal Court's proceedings based on the new record developed by that court.

## V. CONCLUSION

Because the legal claims raised in this case cannot be resolved without a better-developed record, we REVERSE the legal conclusions of the superior court. However, redevelopment of the record of the original child custody proceedings before the Northway court does not serve the current needs of the parties. We therefore REMAND for referral to the Northway Tribal Court to conduct further child custody proceedings.

MATTHEWS, Justice, concurring.

Joined by Justice Compton, I dissented in the first decision in this case.[1] My view was and is that tribes, absent an act of Congress, do not have jurisdiction to decide child custody cases that do not arise in Indian Country. But the majority opinion took the opposite view. It may be that other courts, or this court in future cases, will decide that this important jurisdictional point was erroneously decided. But the majority opinion determined the law that governs the parties in this court. I consider myself bound by that determination under the doctrine of the law of the case.[2] Proceeding thus, I agree with today's opinion.

---

1. *See John v. Baker,* 982 P.2d 738, 765 (Alaska 1999).

2. A number of courts have indicated that the law of the case doctrine exerts a stronger claim on the finality of prior rulings than the doctrine of stare decisis. *See, e.g., Zdanok v. Glidden Co.,* 327 F.2d 944, 952 (2d Cir.1964); *White v. Higgins,* 116 F.2d 312, 317 (1st Cir.1940).