NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JETHRO A., | ) | |
| | ) | Supreme Court No. S-18932 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 4FA-23-00098/ |
| v. | ) | 00099 CN |
| | ) | |
| NATIVE VILLAGE OF TANANA, | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| Appellee. | ) | |
| | ) | No. 2099 – August 13, 2025 |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Terrence P. Haas, Judge.

Appearances: David A. Case, 49th State Law, LLC, Soldotna, for Appellant. Maggie Massey and Lily Cohen, Alaska Native Justice Center, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.   INTRODUCTION

The superior court granted a request to register a tribal court child custody order after concluding that it was entitled to full faith and credit under the Indian Child Welfare Act (ICWA). The children's father appeals, arguing that the tribal court did not have personal or subject matter jurisdiction and that he should not have been required to exhaust tribal remedies before challenging tribal court jurisdiction in state

---

\*   Entered under Alaska Appellate Rule 214.

court. Because the father failed to exhaust tribal remedies and the tribal court's order is entitled to full faith and credit, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Jethro and Martha have two children.[1] The couple has a history of domestic violence. The family lived together in Holy Cross until October 2020 when the Koyukuk Native Village assisted Martha and the children in relocating to Koyukuk "to help [Martha] leave a dangerous relationship with [Jethro]."

Jethro is an enrolled member of the Holy Cross Tribe. Martha and both children are enrolled members of the Koyukuk Native Village and the Native Village of Tanana. The children were not enrolled Tanana members until Tanana became involved in their case.

In November 2021, a year after Martha and the children relocated to Koyukuk, Jethro filed a complaint for custody in superior court seeking primary physical and sole legal custody of the children. In response to Jethro's petition, the Koyukuk tribal court commenced custody proceedings a few weeks later. In December, Jethro's attorney sent a letter to the tribal court objecting to the tribal court's jurisdiction and informing it that Jethro "does not accept service via email." The Koyukuk tribal court held a hearing the next day and issued an order taking temporary legal custody of the children and placing them with Martha.[2]

In February 2023 the superior court issued an interim custody order which apparently placed the children with Martha and accorded Jethro "liberal visitation."

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    Jethro did not participate in this hearing although he was notified by email and phone, and the order did not address Jethro's objection to jurisdiction. The tribal court noted in the order that it was aware that there were related civil custody and domestic violence protective order cases in state court.

In early August 2023 Martha stabbed Jethro while he was at her home in Koyukuk. Jethro was briefly hospitalized and Martha was arrested, leaving the children without an adult at home. On the day of his release from the hospital, Jethro filed an emergency motion to modify the superior court custody order. The Koyukuk tribal court simultaneously convened child protection proceedings, holding a hearing and issuing an order on August 11.[3] The tribal court granted emergency temporary custody to Martha's mother, "due to domestic violence by both parents," and noted that "Tanana Tribe will be given the option to intervene [in] this case."

The superior court held a hearing two weeks later on August 25 regarding the tribal proceedings and jurisdiction. A tribal family and youth specialist for the Native Village of Tanana testified that the Koyukuk and Tanana tribal courts held a joint meeting to discuss custody and jurisdiction on August 24. She stated that the tribal courts agreed that Koyukuk would transfer jurisdiction to Tanana due to concerns about the children's safety because Koyukuk did not have a village public safety officer. She testified that the Koyukuk tribal court order placing the children in their grandmother's custody was "supposed to be" a continuation of their 2021 proceedings.

The Tanana tribal court issued an order three days later on August 28 accepting transfer of jurisdiction from Koyukuk. It ordered the children placed with their maternal grandmother,[4] as the Koyukuk court had done, and scheduled a review hearing for September 12. It noted that "[t]he parents are not able to have the children returned to them upon request."[5] On August 29 the Tanana tribal court provided notice

---

[3]    Neither parent was present at this hearing.

[4]    The grandmother and the children then moved to Tanana.

[5]    *See* 25 U.S.C. § 1903(1)(i) (defining foster care placement as child custody proceeding and explaining that foster care placement includes actions which remove Indian child from parent, where parent cannot have child returned upon demand).

of the hearing to the parents, advising them they would have the opportunity to offer evidence and witnesses. On September 1 Tanana filed a request to register its court order with the superior court, pursuant to Child in Need of Aid (CINA) Rule 24.[6] Jethro objected, claiming that "[t]he tribal court lacks jurisdiction, and the tribal court ignored all challenges to its jurisdiction."

Following a hearing[7] the superior court issued another interim custody order on September 5, finding both parents had a history of committing domestic violence, but awarding primary physical custody to Jethro because Martha was incarcerated. It acknowledged the Tanana tribal court's child protection proceedings and clarified that "[t]his order does not entitle either party to take physical custody of the children from any tribal placement pending further order of the court."

The Tanana tribal court held a hearing a week later and ordered that the children remain in its custody. Jethro did not attend the hearing. The tribal court ordered the children's continued placement with their grandmother and an aunt at the aunt's home in Tanana. The order indicated the parents could request a hearing to change the order by filing a request with the tribal court clerk.

The superior court held a hearing two weeks later on the registration of the tribal court orders in state court. Jethro contested jurisdiction, arguing that he had never been involved with the Native Village of Tanana, had never been to Tanana, and had not known the children had any connection to Tanana. Jethro told the court that he was "not accepting service" from Tanana because its rules did not allow his lawyer to participate solely to dispute its jurisdiction. However, when Jethro was later asked

---

[6]     *See* CINA Rule 24(b) ("[a]n Indian tribe . . . may register a tribal court order by filing a letter, motion, petition, or other document requesting registration and confirmation of the tribal court's order.").

[7]     The hearing was held over three days over the course of more than a year, in June 2022, and February and August 2023.

whether he had been aware of the Tanana tribal court case involving his children, he testified: "Yeah, I know all about it." He testified that he had filed the superior court case to get the children back after Martha brought them to Koyukuk and that he did not "want to get involved with [the] Tanana court." He stated that he would not participate in any future Tanana tribal court hearing.

Jethro argued that Tanana lacked both personal jurisdiction — because Jethro did not have minimum contacts with the Tribe and had not availed himself of its protections — and subject matter jurisdiction — because Tanana took jurisdiction through Koyukuk's transfer of jurisdiction. He asserted that Koyukuk did not have jurisdiction because its 2021 child custody order did not initially qualify as a child custody proceeding under ICWA.[8] He also argued that Tanana did not gain jurisdiction through Koyukuk's transfer because accepting a transfer of jurisdiction is not a form of self-governance. And he argued he had not been properly served.

Tanana argued it had jurisdiction because the children were members or eligible for membership, and ICWA, state, and federal laws recognize its jurisdiction over child protection cases involving its members and children eligible for enrollment. Tanana said that it took jurisdiction in response to Martha's assault of Jethro in August 2023, not based on the events or proceedings that occurred in 2021. And it argued that Jethro's objection to Koyukuk's jurisdiction in 2021 was not relevant to Tanana's assumption of jurisdiction in 2023. Tanana also asserted that Jethro had not participated in Tanana's proceedings, had not raised any objections, and had not exhausted his tribal court remedies.

The superior court granted the request to register the Tanana custody order and held that it was entitled to full faith and credit. The court found that Jethro had

---

[8] 25 U.S.C. § 1903(1).

been provided notice and that he did not exhaust tribal remedies.[9] It said that none of the exceptions to according full faith and credit listed in CINA Rule 24 applied.[10] And the court found that there was no record of whether Jethro raised his jurisdictional argument in the Tanana tribal court.

The superior court observed that a tribe has subject matter jurisdiction in a custody dispute involving children who were either members or eligible for membership. It therefore found that Tanana had subject matter jurisdiction because the children were members of the Native Village of Tanana. Furthermore, the court ruled that Jethro's claim that the Tanana case was merely a continuation of the 2021 Koyukuk proceedings was unfounded. It found that the Tanana court's order was issued in response to the August 2023 domestic violence incident and therefore qualified as a child custody proceeding under ICWA. And it stated that it was "neither empowered nor inclined to paternalistically second guess the Tanana Court's fact finding and decision making." Jethro appeals.

## III. STANDARD OF REVIEW

"We review factual findings for clear error, and will uphold the superior court's findings unless we are left with a definite and firm conviction on the entire record that a mistake has been made."[11] "[T]he scope of tribal jurisdiction and the meaning of federal statutes" are questions of law,[12] which we review de novo and to

---

[9] The court noted that Jethro "[did] not explicitly make an argument regarding notice" but nevertheless found that the Tanana court "was in an emergency situation and made the parents aware of the next hearing."

[10] CINA Rule 24(f).

[11] *Simmonds v. Parks*, 329 P.3d 995, 1007 (Alaska 2014).

[12] *State v. Native Vill. of Tanana*, 249 P.3d 734, 737 (Alaska 2011).

which we apply "the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

## IV. DISCUSSION

We begin our analysis as we did in *John v. Baker* by recognizing "that [tribal] sovereign powers exist unless divested" and that tribes "[have] a strong interest in preserving and protecting" their members and families.[14] In *John v. Baker*, as well as in *State v. Native Village of Tanana* and again in *Simmonds v. Parks*, we explained that when Congress passed ICWA it intended that Alaska Native tribes retain jurisdiction over child custody disputes involving tribal children.[15] Jethro does not challenge Tanana's status as a federally recognized tribe, yet he argues that it does not have the jurisdictional authority to make determinations about these children.[16] He is mistaken. Because the 2023 Tanana tribal court order comes from a federally recognized tribe, it is entitled to full faith and credit under ICWA, and Jethro's failure to exhaust tribal remedies therefore precludes his collateral attack on the order.[17] There is no reason that Tanana could not accept transfer jurisdiction from Koyukuk. We discuss each of our conclusions in turn.

---

[13] *Simmonds*, 329 P.3d at 1007.

[14] *John v. Baker* (*John I*), 982 P.2d 738, 751-52 (Alaska 1999) (internal quotations omitted) (quoting H.R. REP. NO. 95-1386, at 19 (1978)) (observing that "internal functions involving . . . domestic affairs lie within a tribe's retained inherent sovereign powers").

[15] *Id.* at 753-54; *Native Vill. of Tanana*, 249 P.3d at 750; *Simmonds*, 329 P.3d at 1009.

[16] *See John I*, 982 P.2d at 752 ("[An] express congressional delegation of power is required to sustain tribal power when the tribe has sought to control matters outside the scope of internal governmental authority.").

[17] *See Simmonds*, 329 P.3d at 1011 ("Before allowing a collateral attack on sister state judgments, we require parties to exhaust appellate remedies.").

**A.     Tanana's Tribal Court Order Was Issued In A Child Custody Proceeding As Defined By ICWA.**

Under ICWA, states must give full faith and credit recognition to child custody proceedings in tribal courts.[18] While Jethro recognizes that child custody proceedings are entitled to full faith and credit, he denies that this case qualifies as a child custody proceeding under ICWA. ICWA includes foster care placement in its definition of child custody proceedings.[19] Here, Tanana's order falls within that definition because it ordered that the children be placed with their grandmother, noting: "[t]he parents are not able to have the children returned to them upon request."[20]

Jethro argues that a comity analysis is required, but comity is irrelevant to ICWA's child custody proceedings.[21] In *John I*, we held that Alaska courts should extend comity to tribal court judgments involving tribal children.[22] Jethro nonetheless insists that we must determine whether to afford comity to the tribal court orders here.[23] Jethro has not shown, however, that comity is required in addition to full faith and credit, nor has he demonstrated how this case differs from the situation we addressed in

---

[18]     25 U.S.C. § 1911(d).

[19]     25 U.S.C. § 1903(1)(i).

[20]     *See id.*

[21]     *See John I*, 982 P.2d at 761-63 ("Comity is the principle that 'the courts of one state or jurisdiction will give effect to laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect,' " whereas, "ICWA requires courts to extend full faith and credit to tribal court decisions involving 'child custody proceedings' as that term is defined by the statute.").

[22]     *Id.*

[23]     Jethro argues that "a trial court must also deny registration when their judgments would not be entitled to comity," citing *John v. Baker* (*John II*). But unlike this case, *John II* was a custody dispute between parents that did not qualify as a "child custody proceeding" under ICWA. 30 P.3d 68, 70, 72 (Alaska 2001).

*Simmonds.*[24] In *Simmonds*, we explained that tribal court orders in child custody proceedings are entitled to full faith and credit under ICWA.[25] "Under the heightened standard of full faith and credit, a litigant's failure to appeal a tribal court's child custody decision must even more 'seriously undermine any claims that the tribal court denied him due process.' "[26] A comity analysis is unnecessary because this case is governed by ICWA and the tribal court's order is afforded full faith and credit.[27]

### B. No Exceptions To CINA Rule 24 Apply.

CINA Rule 24 governs the procedure for registering tribal court orders in state court.[28] Anyone seeking to contest the validity of a registered order may request a hearing.[29] At such a hearing the court must confirm the registered order unless one of three exceptions applies: (1) the tribal court did not have jurisdiction over the parties or the proceeding; (2) the order has been vacated, stayed, or modified; or (3) proper notice was not given, or if notice was given, the person contesting registration did not have an opportunity to be heard.[30]

---

[24] *See Simmonds v. Parks*, 329 P.3d 995, 1013-14 (Alaska 2014) (comparing comity analysis with full faith and credit and recognizing that full faith and credit requires greater deference to tribal court judgments under heightened standard).

[25] *Id.*

[26] *Id.* (footnote omitted) (first citing *Starr v. George*, 175 P.3d 50, 53 (Alaska 2008); and then quoting *John II*, 30 P.3d 68, 74 n.31 (Alaska 2001)).

[27] *See id.*

[28] CINA Rule 24(f).

[29] *Id.*

[30] *Id.*; *see Simmonds*, 329 P.3d at 1011 ("It is presumed the decisions of tribal courts are sound unless the challenging party can show that the foreign judgment was constitutionally infirm." (internal brackets omitted) (quoting *Starr v. George*, 175 P.3d 50, 56 (Alaska 2008))).

Jethro acknowledges that CINA Rule 24 "affords 'full faith and credit' to certain tribal custody proceedings," and that "[f]ull faith and credit also requires that the issuing court afford the parties due process and render its judgment in accordance with federal and state constitutional standards."[31] But he asserts that the exceptions to CINA Rule 24 apply — the Tanana court did not have jurisdiction over the parties or the proceeding; he did not receive appropriate notice; and even if he did, he was not given an opportunity to be heard. Jethro appears to base his argument on his belief that the Tanana court case was simply a "continuation of the Koyukuk case". He supports his argument on the fact that the 2021 Koyukuk court order and the 2023 Tanana court order used the same case number.[32] He claims that Tanana did not have jurisdiction because the Koyukuk proceeding was not an ICWA child custody proceeding and that the transfer from Koyukuk to Tanana was not an exercise of Tanana's self-governance.

### 1.     Tanana could accept transfer jurisdiction from Koyukuk.

The superior court found that the Tanana tribal court's involvement with the children began in 2023 in response to the domestic violence incident, not in 2021 as Jethro claims, and Jethro does not directly challenge this finding as clearly erroneous. Because the superior court found that this argument was unfounded, and we agree, his appellate arguments are similarly unfounded.

We have long recognized that tribes' powers of internal self-governance include "the power to accept transfer jurisdiction of ICWA-defined custody cases from

---

[31]     *Starr*, 175 P.3d at 55.

[32]     Tanana argues that nothing in the record establishes how the Koyukuk tribal court manages its case numbers. Jethro points to the Tanana family specialist's testimony that the Koyukuk tribal court's August 2023 order was "supposed to be" a continuation of the 2021 proceedings to support the claim that the 2023 proceedings do not fall under ICWA. Tanana responds that "the Superior Court was clear that [the family specialist's] testimony was limited and that she was not a lawyer or a spokesperson for the Tribal Court or the Tribal Council."

state courts, and the power to initiate child protection cases."[33]  Jethro claims that "the transfer of matters from other sovereigns does not lie at the core of Tanana's sovereignty."[34]  But if a tribal court can accept a transfer from a *state* court, there is no logical reason a tribal court cannot similarly accept a transfer from another *tribal* court pursuant to its power of internal self-governance, especially where — as here — the tribe accepting transfer also had the power to initiate the child protection proceeding. We therefore reject Jethro's argument that Tanana could not accept the transfer of jurisdiction from Koyukuk.

### 2. Jethro's failure to exhaust tribal remedies precludes his collateral attack on the Tanana order.

In *Simmonds* we adopted the federal exhaustion of remedies doctrine for appeals of child custody decisions made pursuant to ICWA.[35]  "[W]hen a party challenges the validity of a tribal judgment in an ICWA-defined child custody proceeding, we must consider whether tribal appellate remedies were available."[36] Jethro claims that the superior court made a legal error when it registered the Tanana court's order because the tribal court did not have jurisdiction over him.  However, "[t]he remedy for legal error is appeal, not collateral attack."[37]

---

[33]  *State v. Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 371 P.3d 255, 264 (Alaska 2016) (footnotes omitted).

[34]  Jethro also argues that Tanana lacked jurisdiction because the children were not enrolled until after it accepted transfer of their case from Koyukuk.  Because they were eligible for membership as soon as they were born, this argument has no merit.  *See* 25 U.S.C. § 1903(4)-(5).

[35]  *Simmonds*, 329 P.3d at 1007-08.

[36]  *Id.* at 1011.

[37]  *Id.* (quoting *Wall v. Stinson*, 983 P.2d 736, 741 (Alaska 1999)).

CINA Rule 24 requires the superior court to determine that the tribal court had jurisdiction over the parties or the proceeding before registering its order.[38] But Jethro did not exhaust his tribal avenues for relief before filing this appeal — as is required by *Simmonds*.[39] Nor did he claim that an exemption to exhausting tribal remedies applied.[40] He did not allege that the Tanana tribal court acted in bad faith. He received notice and had an opportunity to participate in the tribal court proceedings, which he declined. Because none of the exceptions to exhaustion apply, Jethro was required to seek tribal appellate remedies.[41]

Jethro makes the unsupported argument that the Tanana tribal court has no procedure for challenging its jurisdiction. Tanana responds by pointing to the table of contents of its tribal court judicial code, which includes an "Appellate Court" subsection, as well as to its court's initial order accepting transfer of jurisdiction. It notes that the order provided the date for the first review hearing, and that another order indicated the date for the second review hearing, both of which it asserts were served on Jethro. It also observes that the Tanana court order itself explained the process to challenge or request review of the order.

Here, the Tanana court orders identified the procedure available to challenge the order and request review. Jethro did neither. Because he failed to exhaust available tribal court remedies, he cannot collaterally attack Tanana's jurisdiction in state court.[42]

---

[38] CINA Rule 24(f).

[39] *See Simmonds*, 329 P.3d at 1011.

[40] *See id.* at 1014.

[41] *See id.*

[42] *See id.* at 1011.

### 3.     Jethro does not sufficiently argue notice on appeal.

Jethro does not address the second exception to CINA Rule 24,[43] so we now turn to the third exception regarding notice.[44] Jethro makes no specific argument.[45] He asserts that the Indian Civil Rights Act extended constitutional due process requirements to tribes, and concludes that he is therefore entitled to service. Yet the superior court found that Jethro did not "explicitly" argue that he was not provided notice of the proceedings or an opportunity to be heard before the Tanana tribal court. The superior court also found that the Tanana court "was in an emergency situation" and that it had made Jethro aware of the next hearing. Although he raised the issue of notice briefly in superior court,[46] he does not sufficiently argue on appeal that service was improper.[47] Therefore Jethro's due process argument fails.

The record supports the court's finding that domestic violence instigated the proceedings in the Tanana tribal court and that those proceedings fall squarely under ICWA.[48] The court did not err by registering the tribal court order. The tribal court's orders are entitled to full faith and credit, and no exception under CINA Rule 24(f) applies.

---

[43]     Jethro does not address whether the order has been vacated, stayed, or modified.

[44]     *See* CINA Rule 24(f).

[45]     Because Jethro does not sufficiently raise the issue of notice and proper service on appeal, this issue is waived. *See Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 598-99 (Alaska 2012) (noting even if issue is "cursorily presented" in appellant brief, but was not in appellant's points on appeal, it is waived).

[46]     Jethro testified at trial he had not been properly served.

[47]     And, as Tanana points out, improper service is not an exception under CINA Rule 24.

[48]     *See* 25 U.S.C. § 1903(1)(i).

Jethro chose not to seek review of Tanana's tribal court order as provided by its procedure. Jethro has thus failed to exhaust available tribal remedies[49] and cannot now seek to invalidate the tribal court order by alleging it denied him due process.

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

[49]    *See Simmonds v. Parks*, 329 P.3d 995, 1011 (Alaska 2014).