**Dennis STARR and Delores Starr, Appellants,**

**v.**

**Richard GEORGE; Barbara George; and Denni Starr, Appellees.**

No. S–12456.

Supreme Court of Alaska.

Jan. 18, 2008.

Lisa B. Nelson, Anchorage, for Appellee Denni Starr.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Richard and Barbara George are the paternal grandparents of two young Tlingit children. They filed a superior court custody petition and served Dennis and Delores Starr, the maternal grandparents. The Georges had previously been granted visitation with the children in state court guardianship proceedings brought by the Starrs after the children's mother killed their father. While these three superior court cases were still pending, the Starrs obtained tribal council resolutions approving their adoption of the children. The Starrs then moved to dismiss the Georges' state court custody action. The Georges did not have prior notice of the tribal council adoption proceedings. The superior court denied the Starrs' motion to dismiss. After a trial the superior court granted physical and legal custody of the children to the Georges and visitation rights to the Starrs. Because the Georges' involvement in the pending superior court proceedings entitled them to notice and an opportunity to be heard in the adoption proceedings, the tribal council resolutions are not entitled to enforcement in Alaska state courts. We therefore affirm the superior court's order denying the motion to dismiss and its award of custody and visitation.

## II. FACTS AND PROCEEDINGS

Denni Starr and Richard "Buddy" George, Jr. had two daughters together, K.S., born in 1997, and S.G., born in 2002. On July 26, 2003, Denni Starr fatally stabbed Buddy George in the presence of their children.[1] A jury ultimately found Denni guilty of second-degree murder and reckless endangerment for recklessly creating a substantial risk of serious harm to her infant daughter, S.G.,

Kenneth C. Kirk, Kenneth Kirk & Associates, Anchorage, for Appellants.

Holly Handler, Alaska Legal Services Corporation, Juneau, for Appellees Richard George and Barbara George.

1. *Starr v. State,* Mem. Op. & J. No. 5166 at 1 (Alaska App., Jan. 31, 2007), 2007 WL 293072.

who was in her father's arms at the time of the attack.[2] The court sentenced her to thirty years for murder and one year for reckless endangerment.[3]

In the meantime, the maternal grandparents, Dennis and Delores Starr, filed for guardianship of the children in superior court in Case No. 1JU–03–155 PR/G and Case No. 1JU–03–156 PR/G (collectively referred to as "2003 guardianship cases"); on August 5, 2003, the superior court appointed the Starrs as guardians. The paternal grandparents, Richard and Barbara George, initially consented to the Starrs' guardianships. By order of August 18, 2004, the superior court granted the Georges visitation rights in the guardianship cases. In September 2004 the Georges filed a motion in those cases to enforce their visitation rights, claiming the Starrs had denied the Georges visitation with the children. On September 27, 2004, the superior court ordered the Starrs to comply with the visitation order and set a hearing for November 1 to hear visitation issues.

Denni Starr, the children's mother, signed an Alaska Bureau of Vital Statistics "Parental Statement" form on October 8, 2004 listing both K.S. and S.G. and stating that, "[these] child[ren] ha[ve] been adopted, under the custom of the child[ren]'s tribe." The form listed Dennis and Delores Starr as the adoptive parents. The Georges appear to have been unaware that Denni Starr had signed the Parental Statement form.

Both the Starrs and the Georges participated in the November 1, 2004 hearing regarding visitation in the 2003 guardianship cases. The Starrs testified at the hearing, but never mentioned the possibility of any other proceedings involving the children apart from the superior court guardianships.

Also on November 1, 2004, the Georges commenced a new superior court action, Case No. 1JU–04–869 CI ("2004 custody case"), seeking custody of both children; they personally served the Starrs with the petition. The Georges sought custody on the

grounds the Starrs had removed K.S. and S.G. from Angoon and had allegedly prevented the children from having any contact with relatives on the paternal side of the family. On November 19, 2004, the Starrs answered and denied that they had prevented the Georges from exercising their visitation rights.

On February 26, 2005, the Starrs signed for each child a Request for Substitute Birth Certificate Following a Cultural Adoption verifying that they were the adoptive parents of K.S. and S.G. There is no indication, and the Starrs do not contend, that these forms were served on or received by the Georges or that the Georges were aware of them before September 2005, when the Starrs filed a motion to dismiss in the 2004 custody case.

On May 17, 2005, the Georges filed a motion for summer visitation in the 2004 custody case. The superior court's June 17, 2005 order awarded summer visitation to the Georges in the custody case.

On June 30, 2005, the parties' local tribal council, the Angoon Community Association (ACA), approved resolutions stating that it "has recognized" the Starrs' adoptions of the two children. The ACA also issued Tribal Statements affirming each child's adoption and stating that "the tribe has not been informed of any person or agency other than the adoptive parents who is asserting claim to custody under state or tribal law." These statements are dated June 30, 2005. It is unclear whether the resolutions—which were prepared on Alaska Bureau of Vital Statistics forms [4]—were recognitions of tribal adoptions that had taken place previously or were themselves the council enactments that sought to approve the Starrs' tribal adoption petitions.

There is no evidence the Starrs or the ACA provided the Georges formal notice or an opportunity to be heard in the tribal council proceedings.

**2.** *Id.*

**3.** *Id.*

**4.** The Tribal Resolution forms issued by the Bureau of Vital Statistics were revised in March 2006 and now state that they are "not for use with tribal court adoption."

On July 5, 2005, the Alaska Bureau of Vital Statistics issued new birth certificates for K.S. and S.G. naming the Starrs as parents.

On September 1, 2005, the Starrs moved to dismiss the Georges' 2004 custody case, arguing that the adoptions terminated the legal relationship between the Georges and the children and that the Georges no longer possessed standing in the custody action. The Georges opposed the motion, arguing that because they did not receive notice prior to the adoption resolutions, the adoption resolutions were not entitled to comity.[5]

The superior court denied the Starrs' motion to dismiss. The court concluded that the Indian Child Welfare Act (ICWA)[6]—which requires courts to extend full faith and credit to tribal court decisions involving "child custody proceedings"[7]—did not apply. The court reasoned that the custody dispute did not raise either of the concerns ICWA seeks to address[8] and that the rationale for ICWA's divorce exception[9] justified applying that exception to a custody dispute between grandparents when the parents are no longer available.

The superior court therefore concluded that the tribal adoptions were not subject to full faith and credit, but rather were subject to the principle of comity—a principle under which it is easier to attack the parallel judgments of foreign (in this case, tribal) courts.[10] The superior court further concluded that the tribal adoptions were not entitled to comity because the Georges had not been given notice and an opportunity to be heard in violation of their due process rights. The superior court therefore denied the Starrs' motion to dismiss the Georges' custody proceeding.

The superior court then conducted a two-day trial in the custody case, and issued findings of facts and conclusions of law. The court found that it was in the children's best interest for the Georges to be awarded physical and legal custody because they were "most willing and able to facilitate and encourage the children to have a close and continuing relationship with their mother's parents and family." The court granted the Georges physical and legal custody of the girls and granted the Starrs visitation rights.

The Starrs appeal the denial of their motion to dismiss on the ground the tribal adoptions were entitled to full faith and credit.[11]

---

**5.** Each of the Georges filed an affidavit that identically stated:

> At no time before June, 2005 did I receive notice from anyone that Angoon Community Association was reviewing a petition for tribal adoption of my granddaughters; The first I heard about the ACA tribal adoption was by word of mouth here in Angoon in June; I never received any written or oral notice that a petition for adoption was filed or being considered.

In their accompanying memorandum, the Georges argued that:

> In June, [they] learned that the Angoon Community Association ... tribal court had issued a resolution granting Mr. and Mrs. Starr's request for cultural adoption. This was the first notice either had received of the tribal adoption proceeding. Documentation of such tribal adoption was not provided until the Motion to Dismiss was filed September 1, 2005.

**6.** Indian Child Welfare Act (ICWA) of 1978, 25 U.S.C. § 1901 *et seq.* (2006).

**7.** 25 U.S.C. § 1911(d).

**8.** *See John v. Baker (John I )*, 982 P.2d 738, 746–47 (Alaska 1999) (noting that "Congress stated that the statute's dual purpose was 'to protect the best interests of Indian children and to promote

the stability and security of Indian tribes and families.' " (quoting 25 U.S.C. § 1902)).

**9.** *Id.* at 747. Congress excepted divorce proceedings from ICWA's coverage because, regardless of the outcome of a custody dispute between two Native parents, the child would remain with a Native parent and in the Native village. Therefore, ICWA's procedural safeguards are unnecessary to protect the interests of the family or the tribe. *Id.; see also* H.R.Rep. No. 95–1386, at 31 (1978), *reprinted in* U.S.C.C.A.N. 7530, 7554 ("We believe that the protections provided by this act are not needed in proceedings between parents.").

**10.** *See, e.g.,* Robert Laurence, *The Convergence of Cross–Boundary Enforcement Theories in American Indian Law: An Attempt to Reconcile Full Faith and Credit, Comity and Asymmetry,* 18 Quinnipiac L.Rev. 115, 125–26 (1998) (noting that "once full faith and credit principles are found to apply, the receiving court is very restricted in the kinds of collateral attacks that it is allowed to entertain" and recognizing that "[c]omity is less restrictive a doctrine than full faith and credit").

**11.** There is no indication that a "separate document" was entered amounting to a final judgment in the custody case. Civil Rule 58 provides

Denni Starr joins her parents' arguments as an appellee.

## III. DISCUSSION

### A. Standard of Review

 The parties agree that all of the issues on appeal present questions of law. We review rulings on questions of law de novo, adopting the rule of law most persuasive in light of precedent, reason, and policy.[12] We apply our independent judgment to decide legal questions such as the scope of the tribal court's subject matter jurisdiction and the meaning of federal statutes.[13] When construing statutes that affect the rights of Native Americans, we liberally construe these statutes and resolve ambiguities in favor of Native Americans.[14]

### B. Whether ICWA's Divorce Exception Applies Here

 ICWA applies in a "child custody proceeding"[15] involving an "Indian child."[16] ICWA's provisions, including the requirement to grant full faith and credit to judicial proceedings of Indian tribes, apply only to child custody proceedings involving Indian children.[17] Custody awards to one parent in a divorce proceeding are specifically excepted by ICWA's so-called "divorce exception."[18]

In *John v. Baker* (*John I* ) we extended the divorce exception to exclude from ICWA's coverage custody disputes between unmarried parents.[19] We noted that the dual goals of ICWA—"to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families"—are not implicated in custody disputes between unmarried parents.[20] Regardless of the outcome, in a dispute between unmarried parents, the child would continue to be raised in the home of a Native parent and in a Native village; thus, ICWA's exclusive jurisdiction and procedural guidelines are unnecessary to protect the family's or the tribe's interests in those situations.[21]

The superior court used this reasoning to conclude that the divorce exception applies to custody disputes between grandparents when the parents are unavailable.

We conclude, however, that the divorce exception does not extend to custody disputes between grandparents. In *A.B.M. v. M.H.* we held that ICWA does not have an exception for "custody disputes within the extended family."[22] We further noted that a grandparent is an extended family member.[23] Although we recognized that, upon adoption by members of the child's extended family, application of ICWA was not required to

---

in pertinent part: "Every judgment must be set forth on a separate document distinct from any findings of fact, conclusions of law, opinion, or memorandum." The Georges do not argue that there is no appealable final judgment. Had that argument been made after the appeal was commenced, we could have, as an exercise of discretion, chosen to treat the appeal as a petition for review. Alaska R.App. P. 402; *see Municipality of Anchorage v. Anderson*, 37 P.3d 420, 421 n. 5 (Alaska 2001) (noting that appeal improperly brought may be treated as petition for review, but review "will be granted only where the sound policy behind the rule requiring appeals to be taken only from final judgments is outweighed"); *Bradley v. Bradley*, 32 P.3d 372, 372 (Alaska 2001) (granting review of appeal of nonfinal judgment authorizing writ of execution).

**12.** *J.S. v. State*, 50 P.3d 388, 391 (Alaska 2002) (citation omitted) (applying independent review to superior court decision holding that ICWA does not require active efforts to reunify father with sons after he was convicted of sexually abusing them).

**13.** *John I*, 982 P.2d at 744.

**14.** *Id.* at 752 (citing *Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976)).

**15.** 25 U.S.C. § 1903(1).

**16.** 25 U.S.C. § 1903(4). The children are Tlingit. The parties do not dispute that the children are Indian children within the meaning of ICWA.

**17.** 25 U.S.C. § 1911(d).

**18.** 25 U.S.C. § 1903(1).

**19.** *John I*, 982 P.2d at 747.

**20.** *Id.* at 746–47.

**21.** *Id.*

**22.** *A.B.M. v. M.H.*, 651 P.2d 1170, 1173 (Alaska 1982).

**23.** *Id.* (citing 25 U.S.C. § 1903(2) (Supp.1981)).

preserve the child's ties to Indian cultural or social values, we could not justify creating a judicial exception on this basis alone.[24] It was error to create such an exception here.

The divorce exception guarantees that parents can always litigate in state court their paramount parental rights. In comparison, persons who do not have rights as paramount as those of parents are necessarily subject to ICWA (assuming ICWA applies). We next address whether, as the Starrs argue, the tribal resolutions are entitled to full faith and credit.

## C. Whether the Tribal Resolutions Are Entitled to Full Faith and Credit

■ For purposes of discussion, we assume without deciding that the tribal council adoption proceedings were child custody proceedings within the meaning of ICWA.[25] Despite that assumption, we determine that the tribal resolutions in this case are not entitled to comity *or* full faith and credit; therefore it is irrelevant whether the comity or full faith and credit standard applies because the tribal resolutions do not meet the threshold for either standard.

■ ICWA requires the state to give the same credit to tribal court judgments it gives to the judgments of the courts of sister states.[26] When determining whether to accord full faith and credit to a judgment of the court of a sister state, we first decide whether the issuing court had personal and subject matter jurisdiction when it entered its judg-

ment.[27] Full faith and credit also requires that the issuing court afford the parties due process and render its judgment in accordance with federal and state constitutional standards.[28] We turn first to the due process issue because it turns out to be controlling in this case.

The Starrs argue that due process was not violated because the Georges were not entitled to due process rights and notice to them was therefore not required. The Starrs contend that "Judge Weeks' decision assumes, without actually addressing it, that the paternal grandparents took the position of their son when he died, and that they are therefore entitled to such notice." The Starrs assert that this assumption was error because "[n]othing in the laws supports such a conclusion." The Starrs additionally argue that an extant guardianship case does not prohibit adoption because custody and adoption are two different types of proceedings.

In response, the Georges argue that "[l]egally and logically," they were interested parties in the adoption proceedings. In support, the Georges point to the 2004 superior court order granting them visitation rights in the 2003 guardianship cases and the June 2005 order issued in the 2004 custody case formally recognizing the standing of both sets of grandparents to assert custody claims under AS 25.20.070.

We agree with the Georges. It is unclear when the tribal court proceedings began. At

---

24. *Id.*

25. ICWA applies only to specified child custody proceedings, which are limited to foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. Felix S. Cohen, Cohen's Handbook of Federal Indian Law § 11.02[3], at 828 (Nell J. Newton et al. eds., 2005 ed.) (citing 25 U.S.C. § 1903(1)). The state court proceedings initiated by the Starrs and by the Georges were arguably foster care placement proceedings within the meaning of ICWA since they involved removing an Indian child from its parent for placement in the home of a guardian where the parent could not have the child returned upon demand. *See* § 1903(1)(i). But subsection (i) refers to "temporary placement." This condition arguably was not satisfied by the state court proceedings since the custody sought did not purport to be temporary. The grant of exclusive jurisdiction to an Indian tribe under

§ 1911(a) of ICWA does not apply to this case because the children did not reside on a reservation. Although an adoption proceeding is within ICWA's definition of a "child custody proceeding," adoption proceedings initiated in state court cannot be transferred to tribes under § 1911(b). We do not decide here whether tribes have independent jurisdiction over adoption proceedings such that their adoption proceedings are child custody proceedings to which states must give full faith and credit under § 1911(d).

26. 25 U.S.C. § 1911(d).

27. *Wall v. Stinson*, 983 P.2d 736, 737 (Alaska 1999).

28. *State, Dep't of Pub. Safety v. Fann*, 864 P.2d 533, 536 n. 5 (Alaska 1993).

some point the Starrs sought permission from the ACA to adopt the children, but we do not know when this occurred. The Starrs' motion to dismiss states only that "[s]hortly after Den[ni] Starr's conviction in September, 2004, defendants Dennis and Delores Starr petitioned the Angoon tribal authority to adopt the minor children." The Starrs' brief on appeal states, without citing to a dated document confirming the assertion, that they filed the petition "[s]ometime in approximately September or October 2004."

But around that time, on November 1, 2004, the Starrs testified in a visitation hearing in the 2003 guardianship cases. As previously mentioned, at no point during the hearing did the Starrs tell the superior court that there were any other proceedings involving the children apart from the superior court proceedings.

Similarly, AS 25.30.380(a)(2) requires that "each party, in its first pleading ... must state whether the party ... knows of a proceeding that could affect the current proceeding, including a proceeding for enforcement and a proceeding relating to ... termination of parental rights, and adoptions." The Georges' November 1, 2004 custody petition, filed in the superior court in the 2004 custody case and served on the Starrs, alleged that there was no pending action regarding the children in any court, including tribal court, other than the 2003 guardianship cases still pending before the superior court. The Starrs' November 19, 2004 answer did not mention any tribal council proceedings and did not deny the truth of the Georges' assertion. The Starrs' answer in the custody case is therefore deemed to have admitted that there was no other proceeding dealing with the children, apart from the 2003 superior court guardianship cases that were still pending.[29]

Furthermore, the Starrs' September 2005 motion to dismiss the 2004 custody case states that "[t]he matter was taken up by the Angoon Community Association ... on June 30, 2005." We therefore conclude that the tribal council first adopted the resolutions on June 30, 2005.

This means that there were three open superior court proceedings (the two 2003 guardianship cases and the 2004 custody case) in existence before the tribal court adopted the resolutions. The Georges were interested parties in the adoption proceedings both because of their status as petitioners in the 2004 custody case and because they were holders of court-ordered visitation rights in the 2003 guardianship cases. The parties appeared in state court litigating custody and visitation issues before the tribe considered the Starrs' adoption petition. As a result of the 2003 guardianship cases—and particularly the entry of the August 2004 order granting visitation rights to the Georges—and the November 1, 2004 commencement of the petition for custody in which the Starrs were personally served, the Starrs knew that the Georges had been granted visitation rights by court order, and were seeking custody. Their involvement in the state court proceedings entitled the Georges to due process in the tribal court proceedings.

We next consider whether the tribal court proceedings satisfied due process. As an initial matter, we note that the Georges had the burden of proving a due process violation.[30] We have previously noted that it is presumed the decisions of tribal courts are sound [31] unless the challenging party can show that the foreign judgment was "constitutionally infirm." [32]

In *John I*, we stated in dictum that comity should not be granted to tribal judgments if due process was denied.[33] We also noted there that, "[i]n deciding whether tribal court proceedings complied with due process, courts should consider whether the parties

---

29. *See* Alaska R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading.").

30. *John v. Baker (John II )*, 30 P.3d 68, 72 (Alaska 2001) (determining that party challenging validity of foreign judgment has burden of proof).

31. *Id.*

32. *Fann*, 864 P.2d at 536.

33. *John I*, 982 P.2d at 762–64.

received notice of the proceedings and whether they were granted a full and fair opportunity to be heard before an impartial tribunal that conducted the proceedings in a regular fashion." [34] In *Evans v. Native Village of Selawik IRA Council* we refused to afford comity to a tribal adoption resolution after concluding that a lack of notice violated an unwed father's due process rights. [35]

We conclude that failure to give notice and an opportunity to be heard violates due process requirements under a full faith and credit standard as well. Even if the tribal council's adoption orders warrant a full faith and credit analysis under § 1911(d), "[t]he statute does not require the state court to give absolute deference to a tribal court order regardless of the circumstances." [36] As we previously stated:

> The requirement of full faith and credit is to be read and interpreted in the light of well-established principles of justice, protected by other constitutional provisions which it was never intended to modify or override.... [N]o state may obtain, in the tribunals of another jurisdiction, full faith and credit for a judgment which is based upon an unconstitutional law, or is rendered in a proceeding wanting in due process of law enjoined by the fundamental law. Indeed, due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process.[37]

ICWA requires the state to give the same credit to tribal court judgments it gives to the judgments of the courts of sister states. [38] We therefore look to the federal Full Faith and Credit Clause [39] and the implementing federal statute, [40] which require the state to give full faith and credit to the judgments of the courts of sister states, for guidance in determining whether the tribal court resolutions meet the requirements entitling them to full faith and credit under ICWA.

In analyzing the federal Full Faith and Credit Clause and § 1738, the United States Supreme Court said that "[a] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." [41] The Court also stated that a court proceeding "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for ... full faith and credit" under § 1738. [42]

Here the tribal adoption proceedings did not meet the minimum procedural requirements of due process. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." [43] We have also noted that notice and

34. *Id.* at 763.

35. *Evans v. Native Vill. of Selawik IRA Council,* 65 P.3d 58, 59–60 (Alaska 2003).

36. *In re Adoption of T.R.M.,* 525 N.E.2d 298, 306 (Ind.1988) (noting that, although § 1911(d) requires state court to give full faith and credit to tribal proceedings to same extent state court gives full faith and credit to orders of other entities, all foreign judgments remain open to collateral attack for constitutional infirmities).

37. *Fann,* 864 P.2d at 536 n. 5 (quoting 47 Am. Jur.2d *Judgments* § 1221 (1969)).

38. 25 U.S.C. § 1911(d).

39. U.S. Const. art. IV, § 1.

40. 28 U.S.C. § 1738 (2006) ("[J]udicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). Congress enacted § 1738 to implement the Full Faith and Credit Clause. *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 437, 64 S.Ct. 208, 88 L.Ed. 149 (1943).

41. *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

42. *Id.* at 481, 102 S.Ct. 1883.

43. *Aguchak v. Montgomery Ward Co.,* 520 P.2d 1352, 1356 (Alaska 1974) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950)) (adopting the *Mullane* due process standard for constitutionally effective notice under the Alaska Constitution).

an opportunity to be heard are essential elements of due process under the Alaska Constitution.[44] Compliance with due process requirements is particularly important in cases involving child custody and the termination of parental rights.[45]

As the Starrs correctly point out, "[t]ribal courts, quite obviously, do things differently than state courts." Indeed, tribal courts need not provide due process in the exact manner as state courts.[46] "The proceedings must, however, be addressed to the issues involved in a meaningful fashion and pursuant to adequate notice." [47]

■ Lack of notice is a "recognized exception[ ]" to full faith and credit.[48] "A judgment rendered without judicial jurisdiction or without adequate notice or adequate opportunity to be heard will not be recognized or enforced in other states." [49] Other states have declined to extend full faith and credit to sister state judgments under 28 U.S.C.

§ 1738 for procedural due process violations based on lack of notice.[50] We likewise decline to extend full faith and credit to the Starrs' tribal adoption order under 25 U.S.C. § 1911(d) for the procedural due process violation here.

It is unclear when the Starrs began the tribal adoption proceedings but it is undisputed that the Georges were not given formal notice or an opportunity to be heard at any time before the ACA issued the resolutions.[51] The Starrs do not contest the superior court finding that the Starrs did not give the Georges formal notice of the adoptions until the Starrs filed their motion to dismiss on September 1, 2005. The tribal court adoption proceedings therefore failed to comply with the minimal requirements of due process. Because the Georges' due process rights were violated, the tribal adoptions are not entitled to full faith and credit.

The Starrs also contend that if we decide that the Georges should have been given

**44.** *Evans,* 65 P.3d at 60 (citing *City of N. Pole v. Zabek,* 934 P.2d 1292, 1297 (Alaska 1997); *Walker v. Walker,* 960 P.2d 620, 622 (Alaska 1998)).

**45.** *See Siekawitch v. Siekawitch,* 956 P.2d 447, 449 (Alaska 1998) ("In a child custody proceeding, the parties are entitled to a hearing that grants them the opportunity to present the quantum of evidence needed to make an informed and principled determination.") (citation and internal quotations omitted); *see also In re K.L.J.,* 813 P.2d 276, 279 (Alaska 1991) (recognizing that the "interest of a parent whose parental rights may be terminated via an adoption petition is of the highest magnitude").

**46.** *See Crowe v. E. Band of Cherokee Indians, Inc.,* 506 F.2d 1231, 1236 n. 14 (4th Cir.1974) (noting that "[t]he proceedings of the Council need not, of course, be conducted with all of the trappings of a court of law").

**47.** *Id.; see also* Indian Civil Rights Act, 25 U.S.C. § 1302 (2006) ("No Indian tribes in exercising powers of self-government shall ... deprive any person of liberty or property without due process of law...."); 2004 Formal Op. Att'y Gen. No. 661–04–0467, 2004 WL 2337177, at *12 (October 1, 2004):

> [T]he state will defer to such tribal court orders only if the tribe exercised jurisdiction in a manner consistent with ICWA, the tribe afforded due process to the litigants in the tribal court (including the opportunity to contest jurisdiction), and the tribal court otherwise acted in a manner consistent with the United States Constitution....

**48.** *Hall v. McCormick,* 154 Vt. 592, 580 A.2d 968, 969–70 (1990) (recognizing lack of notice exception to·full faith and credit but ultimately finding no denial of due process where defendant had notice of proceeding and chose to appear by counsel).

**49.** RESTATEMENT (SECOND) CONFLICT OF LAWS § 104 (1971).

**50.** *See, e.g., Bastian v. Tuttle,* 606 S.W.2d 808 (Mo.App.1980) (declining to extend full faith and credit to judgment where publication notice was constitutionally insufficient to put on notice former resident who left the state intending not to return); *Keating v. Keating,* 855 A.2d 80 (Pa.Super.2004) (refusing to afford full faith and credit to divorce decree where wife had no notice or opportunity to be heard in Guam divorce proceeding); *R.R. Gable, Inc. v. Burrows,* 32 Wash. App. 749, 649 P.2d 177 (1982) (holding that California default judgment is not entitled to full faith and credit in Washington where defendants were not given notice or opportunity to be heard in California proceeding).

**51.** The superior court order stated, "The Georges' first notice of the adoption proceeding was June 5, 2005—the date the tribal court issued a resolution granting the Starr's request for cultural adoption." The June 5 date appears to be incorrect; the tribal resolutions state that the meeting was held and the resolutions were approved on June 30.

notice, we must remand for a factual determination whether the Georges had "actual notice" in advance of the tribal adoptions. The Georges' affidavits state that "[a]t no time before June, 2005 did [they] receive notice from anyone that Angoon Community Association was reviewing a petition for tribal adoption of [their] granddaughters." As far as we can tell, the tribal adoption resolutions were not approved until June 30, 2005. The record does not establish or imply that the Georges learned about the proceedings before the adoption resolutions were approved. Regardless, the Starrs do not challenge the Georges' assertion that they learned about the adoptions "by word of mouth." Because, as other courts have noted,[52] such an informal method does not satisfy the constitutional notice requirements of due process, it is irrelevant whether the Georges had actual advance notice.

The Starrs additionally argue that the superior court did not adequately consider the availability of "[c]orrective [m]easures" by the tribal court. The Starrs are apparently suggesting that the superior court should have delayed the custody trial to allow the tribal council to provide appellate review of the tribal adoption proceeding. Although the Starrs' motion to dismiss did not ask the superior court for this relief, the Starrs contend that they cannot have "waived certain rights by not bringing them up at the trial level" because "parties under ICWA cannot simply waive rights, because ICWA is mandatory." But appellate review in the tribal court system is not a right mandated by ICWA, and it is hard to imagine what right the Starrs might have had to tribal court appellate review considering that they prevailed in the adoption proceedings. Indeed, the Georges were not even parties. The Starrs have not waived a right, they have merely waived an argument. Because the Starrs failed to adequately raise the argument below, the Starrs have not preserved their corrective measures argument. We therefore do not need to address it.[53]

### D. Whether the Wishes of the Tribal Court Can Be Heard

Our decision today does not, as the Starrs imply, dictate that the wishes of the tribal court cannot be heard. The award of custody to the Georges and visitation to the Starrs made by the superior court on June 22, 2006, does not accomplish an adoption and is not necessarily a permanent grant of custody to the Georges. The Angoon Community Association may move for leave to intervene per ICWA if there are future disputes concerning custody, or if it shows other sufficient circumstances.[54] Likewise, the Starrs may seek a change of custody, or visitation, should there be a change of circumstances.

## IV. CONCLUSION

Because their involvement as litigants and recipients of visitation orders in prior proceedings entitled the Georges to notice and an opportunity to be heard in the tribal adoption proceedings, the tribal resolutions are not entitled to full faith and credit in Alaska state courts. We therefore AFFIRM the judgment below.

BRYNER, Justice, not participating.

**52.** *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (determining that "constructive notice alone does not satisfy the mandate of *Mullane* ") (citing *Mullane,* 339 U.S. at 317, 70 S.Ct. 652); *see also Patterson v. City of Utica,* 370 F.3d 322, 334–36 (2d Cir.2004) (holding that city violated plaintiff's due process rights by not giving plaintiff official notice of meeting which would serve as name-clearing hearing even though plaintiff learned of meeting through word of mouth and attended and participated in hearing); *Edwards v. Edwards,* 310 Or. 672, 801 P.2d 782, 788 (1990) (holding that, even "assuming that in some word-of-mouth fashion defendant received actual notice," defendant's due process rights were violated when plaintiff served defendant by leaving summons in office of lawyer employed by defendant on other matters).

**53.** *State Farm Mut. Auto. Ins. Co. v. Lawrence,* 26 P.3d 1074, 1077–78 (Alaska 2001) (refusing to address argument not adequately raised at trial level).

**54.** 25 U.S.C. § 1911(c).