*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| J.P. and S.P. (Foster Parents), | ) |
| | ) Supreme Court No. S-18107 |
| Appellants | ) |
| | ) Superior Court No. 3AN-17-00032 CN |
| v. | ) |
| | ) **Order** |
| | ) |
| STATE OF ALASKA, | ) **Order No. 116 – March 18, 2022** |
| DEPARTMENT OF HEALTH & | ) |
| SOCIAL SERVICES, DIVISION OF | ) |
| CHILDREN'S SERVICES, J.F. | ) |
| (Child), and SUN'AQ TRIBE OF | ) |
| KODIAK, | ) |
| | ) |
| Appellees. | ) |
| | ) |

Before:    Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.
Winfree, Chief Justice, with whom Carney, Justice, joins, concurring.

This appellate proceeding arises out of a child in need of aid (CINA) case governed by the Indian Child Welfare Act[1] (ICWA) and involving minor J.F. J.F. is an

---

[1]    25 U.S.C. §§ 1901 - 1963. ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902.

Indian child under ICWA.[2]  The Sun'aq Tribe of Kodiak petitioned for a transfer of jurisdiction to its tribal court pursuant to 25 U.S.C. § 1911(b).[3]  The superior court transferred jurisdiction to the Sun'aq Tribe in an order dated May 26, 2021.  The Sun'aq Tribe accepted jurisdiction on June 3, 2021.  The next day J.F.'s foster parents, J.P. and S.P., moved to stay the superior court's transfer order.  J.P. and S.P. later moved for reconsideration of the transfer order.  The superior court denied both motions in orders dated June 11, 2021.  Meanwhile the tribal court entered an order dated June 9, 2021 that placed J.F. with paternal relatives in New Mexico.  On June 11 J.P. and S.P. moved for a stay pending appeal from this court; we summarily denied the stay.  J.P. and S.P. moved for a second stay on June 16, after a tribal court order issued that same day affirmed J.F.'s change in placement.  We again denied the motion for stay.

We explained our reasons for denying the motions for stay in an order dated July 9, 2021 and, in a separate order, invited briefing from the parties on two issues: (1) whether J.P. and S.P. were parties in the CINA proceedings below and may maintain an appeal; and (2) whether the public interest exception to the mootness doctrine applies. We thank the parties for their helpful briefing on these issues.

Having considered the parties' briefing — and assuming without deciding both that J.P. and S.P. were granted intervenor-party status in the superior court and that

---

**2**  *See* 25 U.S.C. § 1903(4) (defining "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe").

**3**  J.F.'s tribe is the Tangirnaq Native Village.  The Sun'aq Tribe, in its petition to transfer jurisdiction, asserted that it had been appointed by the Tangirnaq Native Village to be the Tangirnaq Native Village's representative in J.F.'s case.  For brevity, we refer to the Sun'aq Tribe of Kodiak as "the Sun'aq Tribe" in this order.

such a grant of intervenor-party status would have been appropriate[4] — we dismiss this appeal as moot. "If the party bringing the action would not be entitled to any relief even if it prevails, there is no 'case or controversy' for us to decide," and the action is therefore moot.[5] As explained in our order of July 9, 2021, even if we were to rule that the superior court erred in transferring jurisdiction, we lack the authority to order the court of the Sun'aq Tribe, a separate sovereign, to transfer jurisdiction of the child's proceeding back to state court.[6] And we lack authority to directly review the tribal court's placement order.[7]

J.P. and S.P. argue this case is not moot, citing *Starr v. George*.[8] That case did not involve transfer of jurisdiction to a tribal court. Instead it involved an appeal from a superior court custody award that was issued after, and notwithstanding, a prior

---

[4] *See State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Zander B.*, 474 P.3d 1153, 1164-65 (Alaska 2020) (affirming superior court order granting permissive intervention to foster parents but cautioning that foster parent intervention should be "the rare exception rather than the rule").

[5] *Peter A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 146 P.3d 991, 994 (Alaska 2006).

[6] *See In re M.M.*, 65 Cal. Rptr. 3d 273, 285 (Cal. App. 2007) ("The case has been transferred to the Karuk Tribal Court, which has exercised jurisdiction and declared Minor a ward of that court. Even if we were to reverse, neither the juvenile court nor this court has the power to command the courts of a wholly separate sovereign to return the case to us.").

[7] *Id.* ("Because the Karuk Tribe is a separate sovereign, we could no more compel its courts to comply with our orders than we could compel the courts of a foreign state or nation to do so.").

[8] 175 P.3d 50 (Alaska 2008).

tribal court adoption order.[9]  After the children's mother fatally stabbed their father and was sent to prison, the Starrs (maternal grandparents) were initially appointed guardians, and the Georges (paternal grandparents) received visitation rights.[10]  The arrangement led to conflict, and the Georges filed a superior court action seeking custody.[11] Unbeknownst to them, the Starrs had previously obtained a cultural adoption order from the children's tribe.[12]  The Starrs moved to dismiss the superior court case, arguing that the tribal court adoption order terminated the Georges' relationship with the children so that they lacked standing to assert custody.[13]  The superior court denied the motion to dismiss, ruling that the tribal court order was not entitled to comity because the Georges had not received notice of the tribal court proceeding and therefore were denied due process.[14]  We affirmed.  Applying a full faith and credit analysis rather than comity, we concluded that the tribal court adoption order was not enforceable because the Georges' due process rights had been violated.[15]

A key distinction between *Starr v. George* and this case is the procedural posture.  In *Starr* we were reviewing the superior court's decision to *continue* exercising jurisdiction over the child custody matter after deciding that the tribal court order was

---

[9]     *Id.* at 51-53.

[10]    *Id.* at 51-52.

[11]    *Id.* at 52.

[12]    *Id.*

[13]    *Id.* at 53.

[14]    *Id.*

[15]    *Id.* at 57-58.

not enforceable.[16]  If we had reversed that decision on appeal, the Starrs would have obtained tangible relief because the superior court's subsequent custody order in the Georges' favor would have been vacated.  By contrast, a ruling in this case that the superior court erred in transferring jurisdiction to the Sun'aq Tribe could not afford J.P. and S.P. any relief because we have no power to force the tribal court to vacate its placement order and return jurisdiction to the superior court.[17]

Another key distinction is that in *Starr v. George* the issue of whether the tribal court order should be given effect was actually litigated in superior court.  The superior court ruled that the tribal court order was not entitled to comity because the tribal court proceedings did not afford due process, and we affirmed, reasoning that the lack of due process in tribal court proceedings meant the tribal court decision was not entitled to full faith and credit.[18]  In this matter the parties did not litigate whether the Sun'aq Tribe's order is entitled to full faith and credit[19] in superior court.

J.P. and S.P. also argue that hearing this appeal would not require us to order the Sun'aq Tribe to return jurisdiction because the Tribe never validly obtained jurisdiction.  This argument is based on the notion that it was improper to grant jurisdiction to the Sun'aq Tribe, which has no relationship with the child or family but was acting at the behest of the tribe in which the child *is* eligible for membership — the

---

[16]    *Id.* at 53.

[17]    *See In re M.M.*, 65 Cal. Rptr. 3d 273, 285 (Cal. App. 2007).

[18]    *Starr*, 175 P.3d at 53, 59.

[19]    *See Simmonds v. Parks*, 329 P.3d 995, 1009-10 (Alaska 2014) ("ICWA § 1911(d) requires that state courts give full faith and credit to the judgments of tribal courts in Indian child custody proceedings to the same extent that they give full faith and credit to the judgments of other states.").

Tangirnaq Native Village. Amicus curiae Goldwater Institute makes a similar argument. Goldwater argues that ICWA § 1911(b) cannot be interpreted to allow transfer of jurisdiction to the Sun'aq Tribe because its court would not have the minimum contacts necessary to exercise jurisdiction over the child, who is not eligible for membership in that Tribe. In other words, Congress could not have intended § 1911(b)'s transfer provision to be interpreted so broadly as to allow transfer to a tribal court that lacks personal jurisdiction.

These arguments tend to elide the existence of two distinct questions. The first question is whether the superior court erred in transferring jurisdiction to the Sun'aq Tribe because it is not "the Indian child's tribe" for purposes of ICWA's transfer provision.[20] This question is, at least at the outset, one of statutory interpretation. The second question is whether the Sun'aq Tribe's placement order is invalid and should be denied full faith and credit[21] because the tribal court lacked personal or subject matter jurisdiction to enter a child custody ruling involving J.F.[22]

---

[20] 25 U.S.C. § 1911(b) ("In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.").

[21] *See* 25 U.S.C. § 1911(d) ("The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.").

[22] *See Simmonds*, 329 P.3d at 1011 (explaining that full faith and credit will be denied when "(1) the issuing court lacked personal or subject matter jurisdiction when
(continued...)

That second question is not properly before us. J.P. and S.P. did not argue that the superior court should deny enforcement of the Sun'aq Tribe's placement order because it is not entitled to full faith and credit. Nor did J.P. and S.P. show that they had exhausted their remedies in tribal court — a required showing before making a full faith and credit argument in state court.[23] The only issue before us on appeal is whether the transfer was correct. And as explained above, that issue is moot.

Because the issue is moot, we must determine whether the public interest exception to the mootness doctrine warrants review of the transfer order. To decide whether to hear a moot appeal, we consider three factors:

> (1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[24]

---

[22] (...continued) it entered its judgment; or (2) the issuing court failed to render its judgment in accordance with minimum due process").

[23] *Id*. at 1008 ("[W]e will not allow a party to challenge a tribal court's judgment in an ICWA-defined child custody proceeding in Alaska state court without first exhausting available tribal court appellate remedies."). A party challenging the validity of a tribal court order may show that an exception to the exhaustion requirement applies: because exhaustion of tribal court remedies would be futile or because "tribal adjudicatory authority is so plainly foreclosed by law that the tribal court has no colorable or plausible claim to jurisdiction." *Id.* at 1014-15, 1017. J.P. and S.P. did not advance these arguments below.

[24] *Peter A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 146 P.3d 991, 996 (Alaska 2006).

"We weigh each of these factors in our discretion to determine whether to hear the case; none of the factors is dispositive."[25]

These factors weigh against review in this case. The question of whether a tribe that is not the child's tribe but is acting as the child's tribe's agent may receive jurisdiction under § 1911(b) could arise again and is important to the public interest. And as this case demonstrates, orders transferring jurisdiction present special risk of evading review unless judges are careful to fashion them so as to preserve appellate rights and the parties act expeditiously. But because judges and litigants are likely to do so in most cases, appellate review is not likely to be repeatedly circumvented. For that reason, we decline to hear this moot appeal and reserve judgment for a case in which our ruling will have a tangible impact on the outcome of the child welfare proceeding. This appeal is DISMISSED.

Entered by direction of the court.

Clerk of the Appellate Courts

Meredith Montgomery

cc: Supreme Court Justices

Renee McFarland
Public Defender Agency
900 W 5th Ave Ste 200
Anchorage, AK 99501

Karen Hawkins
Office of Public Advocacy
900 W 5th Ave, Suite 525
Anchorage, AK 99501

Jessica Alloway
Attorney General's Office,
1031 W. 4th Ave, Suite 200
Anchorage, AK 99501

David Voluck
Attorney At Law
P.O. Box 6384
Sitka, AK 99835

Anne Helzer
Attorney At Law
401 E Fireweed Ln Ste 203
Anchorage, AK 99503

Kenneth Jacobus
Kenneth P. Jacobus, P.C.
310 K St. Ste 200
Anchorage, AK 99501

Laura Hartz
Office of Public Advocacy
900 W. Fifth Ave
Anchorage, AK 99501

Mario Bird
Law Office of Mario L. Bird
PO Box 241143
Anchorage, AK 99524

---

[25] *Id.*

ORD 116

WINFREE, Chief Justice, with whom CARNEY, Justice, joins, concurring.

I agree that this appeal should be dismissed as moot. I write separately to express my continuing concern with the impact of *State, Department of Health & Social Services, Office of Children's Services v. Zander B.*,[1] as reflected by the facts of this case.

In *Zander B.* the court held that, although a foster parent intervening as a party in a child in need of aid proceeding should "be the rare exception rather than the rule," intervention is not precluded as a matter of law.[2] And the court concluded that the superior court's grant of permissive intervention for a foster parent should be reviewed for abuse of discretion.[3] In *Zander B.* the foster parents had contested attempts by Office of Children's Services (OCS) to remove their foster child for placement with a family member, claiming the child had bonded with them.[4] The foster parents sought and were granted intervenor status for any placement hearing during the child in need of aid proceedings.[5] Despite recognizing that foster parent intervention in a child in need of aid case risks delays and complications distracting OCS from its mandated family reunification efforts,[6] the court concluded that specific evidence the foster parents possessed about the proposed placement would not be heard absent the foster parents'

---

[1]     474 P.3d 1153 (Alaska 2020).

[2]     *Id.* at 1164.

[3]     *Id.*

[4]     *Id.* at 1165.

[5]     *Id.* at 1157-58, 1164 n.29.

[6]     *Id.* at 1163.

participation and warranted their intervention.[7]  The court thus concluded that it was the "rare [child in need of aid] case" when foster parent intervention was not an abuse of discretion.[8]

The *Zander B.* dissent found the decision "untenable" because foster parents have a statutory right to notice and an opportunity to be heard at any placement review hearing without needing to intervene as a party[9] and because foster parent intervention is contrary to the entire state-mandated family reunification framework.[10] It was clear from the foster parents' filings and related adoption petition that they were attempting to override OCS's reunification efforts and have the biological parents' parental rights terminated, clearing the path for the foster parents to adopt the child.[11] The dissent expressly noted the problematic juxtaposition of foster parents prosecuting parental rights termination for adoption purposes and OCS pursuing family reunification as required by law.[12]

The foster parent intervention issue litigated in *Zander B.* arose in this child in need of aid case, which is governed by the Indian Child Welfare Act (ICWA).[13]  In

---

[7]      *Id.* at 1165.

[8]      *Id.*

[9]      *Id.* at 1175-77 & nn.10-12 (Winfree, J., dissenting).

[10]      *Id.* at 1178-79.

[11]      *Id.* at 1174-75 & n.1, 1178-79.

[12]      *Id.* at 1179.

[13]      25 U.S.C. §§ 1901-1963.  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian
(continued...)

this case the foster parents — who were not a preferred placement under ICWA[14] —
went even further than the *Zander B.* foster parents, asserting they were the child's
psychological parents[15] and seeking to intervene as parties in the child in need of aid case

---

[13]        (...continued)
culture." *Id.* § 1902.

[14]        *See id.* § 1915(b)(i) (granting preference in foster care placement of Indian
child to "a member of the Indian child's extended family").

[15]        *See Rosemarie P. v. Kelly B.*, ___ P.3d ___, Op. No. 7559 at 8-9, 2021 WL
4697719, at *4 (Alaska Oct. 8, 2021) ("A psychological parent . . . 'on a day-to-day
basis, through interaction, companionship, interplay, and mutuality, fulfills the child's
psychological need for an adult. . . .' Alaska courts consider various factors to determine
whether a third party is a psychological parent, including the length of the relationship
with the child, the age and opinion of the child, and whether there is a "strong and
heartfelt bond" between the adult and child." (footnotes omitted) (first quoting *Carter
v. Brodrick*, 644 P.2d 850, 853 n.2 (Alaska 1982); and then quoting *Dara v. Gish*, 404
P.3d 154, 164 (Alaska 2017))).

The issue of "psychological parent" status generally arises in child custody
and visitation disputes between parents and third parties. *See, e.g.*, *id.* at 1, 8-9, 2021
WL 4697719 at *1, *4; *Osterkamp v. Stiles*, 235 P.3d 178, 180-81, 185-89 (Alaska
2010). Otherwise fit parents have constitutional rights to parent their child and to bar
relationships between their child and a third party. *See Rosemarie P.*, Op. No. 7559 at
9 & n.21, 13-14, 2021 WL 4697719 at *4 & n.21, *6-7; *Osterkamp*, 235 P.3d at 187.
But a court may order that a third party with psychological parent status have visitation
with or custody of a child upon a showing, by clear and convincing evidence, that the
welfare of the child requires the visitation or custody. *See Rosemarie P.*, Op. No. 7559
at 8-14, 2021 WL 4697719 at *4-7; *cf. Osterkamp*, 235 P.3d at 185-91.

We have discussed the intersection of foster parent and psychological
parent in one custody and visitation dispute. *See Osterkamp.* at 186-87. In that case an
unmarried couple were foster parents of a child for about 16 months beginning shortly
after the child's birth, and then one of them adopted the child. *Id.* at 180-81. The couple
raised the child together as domestic partners for the next four months, until they
separated. *Id.* at 181. The non-adopting parent unsuccessfully sued for custody and
(continued...)

-11-                                                                            **ORD 116**

to seek custody and contest transfer of jurisdiction from state court to tribal court. Although the superior court did not rule expressly, the court implicitly granted intervention by allowing the foster parents to participate as parties in the proceedings. The foster parents thus inserted themselves not only in ICWA-related placement considerations but also in state-tribal jurisdictional issues, attempting to thwart federal and state statutes governing protection for Indian children in child in need of aid proceedings. In my view this goes beyond the "untenable" result in *Zander B.* I urge superior courts to closely scrutinize foster parent intervention efforts in all child in need of aid cases, and particularly in those governed by ICWA.

---

**15**    (...continued)

visitation, asserting psychological parent status. *Id.* On appeal we affirmed the superior court's ruling that the non-adopting parent was not a psychological parent, agreeing with the superior court that the earlier foster parent relationship had no bearing on a possible psychological parent relationship. *Id.* at 186-87. We noted both the incompatibility of the concepts of foster parents and psychological parents and the adverse impact to the integrity of the state-run foster parent system designed to provide temporary care for children if foster parents could leverage their relationships with foster children to gain formal visitation and custody rights. *Id.* at 187.